**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

COURTNEY MANGO,

                        **Plaintiff,**

      **v.**

CITY OF COLUMBUS, *et al.*,

                        **Defendants.**      **:**

                                      **Case Nos. 2:19-cv-3120, 2:19-cv-5282
Judge Sarah D. Morrison
Magistrate Judge Chelsey M. Vascura**

JANINNY DASILVA,

                      **Plaintiff,**        **:**

      **v.**

CITY OF COLUMBUS, *et al.*,

                        **Defendants.**

**<u>OPINION AND ORDER</u>**

These matters are before the Court on seven motions to dismiss (Mango[1] ECF Nos. 69–72; DaSilva ECF Nos. 13–15) and two motions for judgment on the pleadings (Mango ECF Nos. 75, 76) by the defendants in the two above-captioned cases. Plaintiffs have responded to each of the motions filed in their respective cases. (Mango ECF Nos. 77–80, 88; DaSilva ECF No. 29.) Defendants have filed replies. (Mango ECF Nos. 91–94, 105, 109; DaSilva ECF No. 30.) These motions are now ripe for decision. For the reasons set forth more fully below, the City of

---

[1] ECF numbers preceded by "Mango" refer to documents filed on the "Mango v. City of Columbus" docket (2:19-CV-3120), while ECF numbers preceded by "DaSilva" refer to documents filed on the "DaSilva v. City of Columbus" docket (2:19-CV-5282).

Columbus's Motions to Dismiss (Mango ECF No. 69; DaSilva ECF No. 13) are **GRANTED IN PART** and **DENIED IN PART**. The City employees' Motions to Dismiss (Mango ECF Nos. 70, 71; DaSilva ECF No. 14) are **GRANTED**. The Franklin County Municipal Court Clerk's Motions to Dismiss (Mango ECF No. 72; DaSilva ECF No. 15) are **GRANTED**. Finally, specific to the Mango case, the Maugers' Motions for Judgment on the Pleadings (Mango ECF Nos. 75, 76) are **GRANTED IN PART** and **DENIED IN PART**.

There are three additional items requiring attention in the DaSilva case. First, several Defendants have filed a Motion for Judicial Notice. (DaSilva ECF No. 12.) Ms. DaSilva has not opposed this motion. The motion is **GRANTED**. Second, the Magistrate Judge has recommended that all claims against Ms. Stewart be dismissed without prejudice for failure to effect timely service. (DaSilva ECF No. 28.) Ms. DaSilva has not objected to the Magistrate Judge's recommendation. The Magistrate's report and recommendation is **ADOPTED**, and all claims against Ms. Stewart are **DISMISSED** without prejudice. Third, Mr. Hedges has not filed a motion to dismiss. The claims against him will not be addressed in this opinion.

## I.    FACTUAL BACKGROUND

Ohio law permits a private citizen to initiate criminal proceedings using the following procedure:

> A private citizen having knowledge of the facts who seeks to cause an arrest or prosecution under this section may file an affidavit charging the offense committed with a reviewing official for the purpose of review to determine if a complaint should be filed by the prosecuting attorney or attorney charged by law with the prosecution of offenses in the court or before the magistrate. A private citizen may file an affidavit charging the offense committed with the clerk of a court of record before or after the normal business hours of the reviewing officials if the clerk's office is open at those times. A clerk who receives an affidavit before or after the normal business hours of the reviewing officials shall forward it to a reviewing official when the reviewing official's normal business hours resume.

Ohio Rev. Code Ann. § 2935.09(D) (West 2020). These cases involve private citizens' use of this mechanism in what Plaintiffs allege was an unlawful manner.

### A. Courtney Mango

Plaintiff Courtney Mango was involved in a protracted custody dispute with her ex-husband, Defendant Shane Mauger. (Mango Am. Compl. ¶¶ 40, 44, Mango ECF No. 59.) For some of this time, Shane was incarcerated. (*Id.* ¶ 40.) Three of Shane's family members also participated in the custody litigation—his new wife, Defendant Maria Mauger; his mother, Defendant Janet Mauger; and his father, Defendant Michael Mauger. (*Id.* ¶¶ 10–12, 40.) Ms. Mango alleges that, throughout this custody dispute, the Maugers interfered with the process to divest her of her custody rights.

On November 8, 2017, the two children were visiting Michael and Janet when Michael noticed a bruise on the leg of one of the children, W.M. (Mango ECF No. 59-10, at 2–3.) Michael called the Columbus Police Department ("CPD") to report that Ms. Mango had abused W.M. (Mango Am. Compl. ¶ 30.) CPD took no action "[d]ue to conflicting stories" and referred Michael to the Columbus City Attorney's Office. (Mango ECF No. 59-16, at 8.)

Michael and Maria took W.M. to the hospital and refused to return the children to Ms. Mango's custody. (Mango ECF No. 59-10, at 3.) Michael and the hospital contacted Franklin County Children's Services ("FCCS"), which opened an investigation into the matter. (Mango Am. Compl. ¶ 38; Mango ECF No. 59-10 at 5; Mango ECF No. 59-13, at 9; Mango ECF No. 59-16, at 8.)

On November 9, 2017, Michael and at least one of the children went to the City Attorney's Office where they met with Defendant Robert Tobias. (Mun. Ct. Mot. to Dismiss Hr'g Tr. ("Mango Hr'g Tr.") 28:12–20:3, 25:22–26:13, Mango ECF No. 59-9.) Mr. Tobias is a prosecutor who oversees the unit responsible for reviewing citizen complaints in accordance with

3

the process outlined in Ohio Rev. Code § 2935.09(D) (the "Citizen Complaint Unit"). (*Id.* 10:15–11:4.) Michael was advised to return Ms. Mango's children to her. (Mango ECF No. 59-10, at 3.) The City Attorney's Office did not immediately pursue charges after this meeting. (Mango Hr'g Tr. 31:9–13.)

That same day, Maria sought and received an *ex parte* Civil Protection Order ("CPO") ordering that Ms. Mango have no contact with the children. (Mango ECF No. 59-10, at 4; Mango ECF No. 59-13.) The order was to remain in effect until November 27, 2017, when a hearing on the CPO was to be held. (Mango ECF No. 59-13.) After the CPO was issued, a deputy went to Ms. Mango's home, served her with the CPO, and removed the children from the home and placed them in the custody of the Maugers. (Mango ECF No. 59-10, at 4.)

On November 16, 2017, Michael, Janet, and Maria went to the City Attorney's Office to file domestic violence charges against Ms. Mango. (Mango Am. Compl. ¶ 33.) It is not clear whether the City Attorney's Office had learned any additional information since Michael's last visit. (Mango Hr'g Tr. 31:22–32:19.) However, this time, the City Attorney's Office agreed to let Michael file the charges.

Michael signed two criminal Complaints and a probable cause affidavit in which he alleged that Ms. Mango had physically abused W.M on November 1, 2017. (Mango ECF Nos. 59-1, 59-3, 59-5.) The Complaints contain the initials of Mr. Tobias; Defendant Lara Baker-Morrish, the chief prosecutor at the City Attorney's Office; and Defendant Brice Clymer, an intake officer.[2] (Mango ECF Nos. 59-2, 59-6; Hr'g Tr. 18:12–20:3, 25:22–26:13.) As the chief prosecutor, Ms. Baker-Morrish's initials went on all citizen Complaints (Mango Hr'g Tr. 19:23–

---

[2] Intake officers are part-time, non-lawyer employees of the City Attorney's Office who are generally law students or other graduate students; they are overseen by the supervisors of the Citizen Complaint Unit. (Mango Hr'g Tr. 25:22–26:13.)

20:1); however, there is no allegation that she was personally involved in the filing of the Complaints against Ms. Mango. Mr. Tobias, on the other hand, was personally involved in the case. He created the probable cause affidavit, and he reviewed the documents before they were filed with the Franklin County Municipal Court Clerk's Office. (*Id*. 33:12–14, 35:2–5.) Mr. Clymer wrote his own initials, Mr. Tobias's initials, and Ms. Baker-Morrish's initials on the documents and accompanied Michael to the Clerk's Office where Michael submitted the Complaints. (*Id*. 37:2–5, 38:17–22; Mango ECF Nos. 59-1, 59-5.)

The deputy clerk found that the Complaints established probable cause that Ms. Mango had committed two misdemeanors (domestic violence and assault) and issued a summons for her appearance. (Mango ECF Nos. 59-1, 59-2, 59-3, 59-5, 59-6, 59-12.) The case was prosecuted by the City Attorney's Office, specifically by Defendants Allison Lippman and Stephen Steinberg. (Mango Am. Compl. ¶¶ 14–15.)

On December 18, 2017, Ms. Mango appeared in court in response to the summons and entered a plea of not guilty. (Mango ECF No. 59-7.) After Ms. Mango was arraigned, the City Attorney's Office requested a "stay away" order and asked that she be ordered to comply with the CPO. (Mango ECF No. 59-15.) When Ms. Mango was arraigned, the presiding judge took note of the CPO and the pending FCCS investigation and restricted Ms. Mango's visitation with the children, ordering that she abide by the findings and recommendations of FCCS. (*Id.*; Mango ECF No. 59-10, at 5.) At some point, FCCS determined that the allegations were unsubstantiated and closed its investigation. (Mango ECF No. 59-10, at 5.)

On January 17, 2018, the CPO matter was scheduled for trial. (*Id.* at 4.) Maria sought to delay the trial for a third time, but when her request was denied, she voluntarily dismissed the action. (*Id.*) After the CPO matter was dismissed, Ms. Mango's children were returned to her for

the first time since November 9. (*Id.* at 4–5.) The only time she had seen them in the interim was for two hours on Thanksgiving. (*Id.* at 4.)

In March 2018, Ms. Mango moved to dismiss her criminal case for lack of jurisdiction on the ground that the initiating Complaints had not been filed in compliance with Ohio Rev. Code § 2935.09(D). (Mango ECF No. 59-10.) On July 19, 2018, a Franklin County Municipal Court judge granted the motion and dismissed the charges. (Mango ECF No. 59-4.)

As a result of these proceedings, Ms. Mango was placed on paid leave from her job as a schoolteacher for ten months. (Mango Am. Compl. ¶ 101.) She was also twice subpoenaed to produce her children at a hearing. (*Id.* ¶ 104.)

### B. Janniny DaSilva

Plaintiff Janniny DaSilva is the mother of two children. (DaSilva ECF No. 8-1, at 25–26.) In February 2015, Ms. DaSilva and her ex-husband, Defendant Corey Hedges, jointly agreed that Ms. DaSilva would be awarded sole custody over their son, K.H. (*Id.* at 11.) The father of Ms. DaSilva's second son is Jacob Shinnick. (*Id.* at 25–26.)

On April 5, 2017, Mr. Shinnick's mother called CPD to report that Ms. DaSilva had committed an act of violence against K.H. (DaSilva Am. Compl. ¶¶ 32–33, DaSilva ECF No. 8; DaSilva ECF No. 8-1, at 25.) Ms. DaSilva told the CPD officers that she had been attempting to spank K.H. on his buttocks with her sandal and had accidentally hit his arm. (DaSilva ECF No. 8-1, at 18–19.) The officers concluded that the injury was accidental and took no action, except to contact FCCS for follow-up on the incident. (*Id.* at 19.) FCCS opened an investigation but closed the case within the next six weeks. (*Id.* at 23.)

Almost a year later, on March 28, 2018, Mr. Hedges moved for an Emergency Order of Custody with respect to K.H. (*Id.* at 17.) On April 2, 2018, while Mr. Hedges' motion remained pending, Mr. Hedges and Defendant Rhiannon Stewart (Mr. Shinnick's stepsister) went to the

6

City Attorney's Office to file domestic violence charges against Ms. DaSilva. (DaSilva Am. Compl. ¶¶ 9, 37.) Ms. Stewart signed two criminal Complaints and a probable cause affidavit in which she alleged that Ms. DaSilva had physically abused K.H. on April 5, 2017. (DaSilva ECF No. 8-1, at 1, 3, 5.) The Complaints contain Mr. Tobias's initials. (*Id.* at 2, 4.)

Ms. Stewart then submitted these Complaints to the Clerk's Office. (*Id.* at 1–4.) The deputy clerk found that the Complaints established probable cause that Ms. DaSilva had committed two misdemeanors (domestic violence and assault) and issued a summons or warrant for Ms. DaSilva.[3] (*Id.*; DaSilva ECF No. 12-4.) The case was prosecuted by the City Attorney's Office, specifically by Defendant Michael Wander. (DaSilva Am. Compl. ¶ 11.)

On April 9, 2018, a judge in the Juvenile Division of the Franklin County Court of Common Pleas granted Mr. Hedges' motion requesting an Emergency Order of Custody, primarily based on the two criminal Complaints. (DaSilva ECF No. 8-1, at 17.) The judge ordered that K.H. be removed from Ms. DaSilva's custody and be placed in the custody of Mr. Hedges, and scheduled a hearing for May 15, 2018. (*Id.*)

On May 1, 2018, Ms. DaSilva was arraigned on the charges filed against her and entered a plea of not guilty. (DaSilva ECF No. 12-8.) That same day, Mr. Hedges moved, on behalf of K.H., for a temporary protection order ("TPO") against Ms. DaSilva. (DaSilva ECF Nos. 12-9, 12-10.) The TPO was granted, and the judge ordered that Ms. DaSilva not have any contact with K.H. (DaSilva ECF No. 12-10.) Ms. DaSilva subsequently moved to modify the terms of the

---

[3] The deputy clerk checked the summons box on the front of the Complaints and the arrest warrant on the back of the Complaints. (*Compare* DaSilva ECF No. 8-1, at 1, 3, *with id.*, at 2, 4.) Ms. DaSilva alleges that a warrant was in fact issued. (DaSilva Am. Compl. ¶ 2.) Among the documents of which the Court has taken judicial notice, there is a summons for Ms. DaSilva. (DaSilva ECF No. 12-4.) There is no arrest warrant. Even assuming a warrant was issued, Ms. DaSilva never alleges she was arrested.

TPO, and on June 28, 2018, she was permitted supervised visitation with K.H. (DaSilva ECF Nos. 12-11, 12-12.)

On July 25, 2018, Ms. Stewart moved to dismiss the charges against her on the ground that the Complaints had not been filed in compliance with Ohio Rev. Code § 2935.09(D), citing Ms. Mango's case as precedent. (DaSilva Am. Compl. ¶¶ 40, 49, 52; DaSilva ECF No. 12-13.) On August 18, 2018, the charges against Ms. DaSilva were dismissed by the City Attorney's Office. (DaSilva ECF No. 8-1, at 29.)

Shortly before those charges were dismissed, on August 15, 2018, Ms. Stewart again signed two criminal Complaints and a probable cause affidavit in which she renewed her allegations that Ms. DaSilva physically abused K.H. on April 5, 2017. (*Id.* at 6, 8, 10.) The Complaints were signed by Mr. Tobias. (*Id.* at 7, 9.) Ms. Stewart then submitted these Complaints to the Clerk's Office. (*Id.* at 6–9.) The deputy clerk again found that the Complaints established probable cause that Ms. DaSilva had committed two misdemeanors (domestic violence and assault) and issued a summons for Ms. DaSilva. (*Id.*)

On October 29, 2018, Ms. DaSilva moved to dismiss these re-filed charges, arguing that the delay in taking her case to trial was a violation of her right to a speedy trial. (DaSilva ECF No. 12-18.) On November 27, 2018, a Franklin County Municipal Court judge granted the motion and dismissed the charges. (DaSilva Am. Compl. ¶ 41; DaSilva ECF No. 8-1, at 30.)

During the course of the above-mentioned proceedings, Ms. DaSilva was prevented from having contact with K.H. for several months. (DaSilva Am. Compl. ¶ 106.) She was also forced to make a six-hour round trip journey to court approximately nine times. (*Id.* ¶ 107.)

## II.    PROCEDURAL BACKGROUND

After initiating this case in 2019, Ms. Mango filed an Amended Complaint against the City of Columbus (the "City"); the City Attorney's Office; seven individuals from the City

Attorney's Office (City Attorney Zachary Klein, former City Attorney Richard Pfeiffer, Mr. Tobias, Ms. Lippman, Mr. Steinberg, Ms. Baker-Morrish, and Mr. Clymer); the Maugers; and Lori Tyack, the Clerk of the Franklin County Municipal Court. (Mango Am. Compl. ¶¶ 5–18.) Ms. Mango also named John/Jane Doe employees who purportedly work for the City, the City Attorney's Office, and the Clerk's Office. (*Id.* ¶ 19.)

Ms. Mango's Amended Complaint pleads the following causes of action: a violation of 42 U.S.C. § 1983 due to the alleged violation of Ms. Mango's rights under the First Amendment, Fourth Amendment, Fifth Amendment, Fourteenth Amendment, and Article IV of the United States Constitution (Claim One); malicious prosecution (Claim Two); intentional infliction of emotional distress ("IIED") (Claim Three); negligence (Claim Four); negligent supervision, hiring, training, discipline, and retention (Claim Five); defamation (Claim Six); invasion of privacy (Claim Seven); conspiracy (Claim Eight); and unconstitutional policy (Claim Nine). (*Id.* ¶¶ 112–92.) It is unclear which claims apply to which defendants, except that Claims Five and Nine are not brought against the Maugers. The Court treats all other claims as if they were brought against all defendants.

Ms. DaSilva also brought suit in 2019, before filing an Amended Complaint against the City, four individuals from the City Attorney's Office (Mr. Klein, Mr. Pfeiffer, Mr. Tobias, and Michael Wander), Mr. Hedges, Ms. Stewart, and Ms. Tyack. (DaSilva Am. Compl. ¶¶ 5–12.) Ms. DaSilva also has sued John/Jane Doe employees who purportedly work for the City, the City Attorney's Office, and the Clerk's Office. (*Id.* ¶ 13.)

Ms. DaSilva's Amended Complaint pleads the following causes of action: a violation of 42 U.S.C. § 1983 due to the alleged violation of her First Amendment, Fourth Amendment and Fourteenth Amendment rights, as well as her constitutional right to travel (Claim One);

malicious prosecution (Claim Two); negligent infliction of emotional distress ("NIED") and IIED (Claim Three); negligence (Claim Four); negligent supervision, hiring, training, discipline, and retention (Claim Five); defamation (Claim Six); invasion of privacy (Claim Seven); conspiracy (Claim Eight); unconstitutional policy (Claim Nine); and a violation of her rights under the Ohio Constitution (Claim Ten). (*Id.* ¶¶ 116–98.) It is again unclear which claims apply to which defendants, except that Claims Five and Nine are not brought against Ms. Stewart or Mr. Hedges. The Court treats all other claims as if they were brought against all defendants.

## III.  STANDARDS OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotations omitted). A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is analyzed in the same manner as a motion to dismiss under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). All allegations in the plaintiff's complaint are construed in the light most favorable to her, with all allegations accepted as true and all reasonable inferences drawn in the plaintiff's favor. *Bullington v. Bedford Cty.*, 905 F.3d 467, 469 (6th Cir. 2018). In addition to the allegations in the complaint, the reviewing court may consider exhibits attached to the complaint. *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). The court may also consider documents incorporated by reference into the complaint, *Knapp v. City of Columbus*, 93 F. App'x 718, 720 (6th Cir. 2004), including documents attached to the motion for judgment on the pleadings, so long as those documents are referred to in the complaint and are central to the plaintiff's claim, *cf. Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (stating the same for a motion to dismiss). The court may also take judicial notice of other court proceedings. *Cf. Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) (concluding the same for a motion to dismiss).

"To overcome a defendant's motion, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Bullington*, 905 F.3d at 469 (quoting *Iqbal*, 556 U.S. at 678). The motion should be granted when there is no material issue of fact and the moving party is entitled to judgment as a matter of law. *Tucker*, 539 F.3d at 549.

## IV. ANALYSIS

At the outset, the Court disposes of several of Ms. Mango's and Ms. DaSilva's claims. First, Ms. Mango makes a bald reference to Article IV of the Constitution without specifying why she believes her alleged constitutional rights under Article IV were violated. (Mango Am. Compl. ¶ 113.) Similarly, Ms. DaSilva references her Second and Sixth Amendment rights

without specifically pleading any plausible violations of these rights. (DaSilva Am. Compl. ¶¶ 18, 105.) Nor does she plead violations of her Second or Sixth Amendment rights when outlining her § 1983 claim. (*See id.* ¶¶ 116–31.) Ms. DaSilva thus never asserts a claim for relief for any purported violations of these rights. It is not enough for a plaintiff to state that one of her rights has been violated. Mere conclusory statements without alleging sufficient factual matter to state a plausible claim for relief cannot survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678–79. To the extent Ms. Mango has sought to plead a violation of her Article IV rights, that claim is **DISMISSED**. To the extent Ms. DaSilva has alleged any violations of her Second and Sixth Amendment rights, those claims are **DISMISSED**.

Next, Ms. Mango has withdrawn her claims based on violation of her Fifth Amendment rights, as well as her claims against the City Attorney's Office. (Mango Resp. to City's Mot. to Dismiss at 13, 23, Mango ECF No. 77.) Those claims are also **DISMISSED**.

Finally, Ms. DaSilva briefly asserts a claim for a violation of her rights under the Ohio Constitution. (DaSilva Am. Compl. ¶¶ 197–98.) As the City pointed out in its Motion to Dismiss, "the Supreme Court of Ohio has not recognized the existence of a private cause of action for damages under the Ohio Constitution." *Graham v. Johanns*, No. 2:07-CV-453, 2008 WL 3980870, at *11 (S.D. Ohio Aug. 21, 2008). (*See also* City's Motion to Dismiss DaSilva, 36, DaSilva ECF No. 13.) Ms. DaSilva offered no response to this argument. (*See* DaSilva Resp. to City's Mot. to Dismiss, DaSilva ECF No. 29.) Therefore, Ms. DaSilva's claim under the Ohio Constitution is **DISMISSED**.

Plaintiffs' remaining claims are addressed below, by Defendant.

### A. Public Officials and Employees

Plaintiffs bring suit against Mr. Klein, Mr. Pfeiffer, Ms. Baker-Morrish, Mr. Tobias, Ms.

Lippman, Mr. Steinberg, Mr. Clymer, Mr. Wander, and John/Jane Doe employees who worked for the City and the City Attorney's Office (the "City employees") both individually and in their official capacities.

### 1. The official capacity claims are dismissed as redundant.

A lawsuit brought against a public official in his/her official capacity is treated as a suit against the government entity rather than the official personally, since the entity is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As a result, in order to prove liability, a plaintiff must prove that it was the entity's policy or custom that caused the constitutional injury. *Id.* The same standard is used to prove municipal liability. *See Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).

As this Court has previously observed, "[c]ourts regularly dismiss as redundant claims against agents in their official capacities when the principal entity is also named as a defendant in the suit." *See Johnson v. Wash. Cty. Career Ctr.*, No. 2:10-CV-076, 2010 WL 2570929, at *4 (S.D. Ohio June 22, 2010) (citing *Von Herbert v. City of St. Clair Shores*, 61 Fed. Appx. 133, 140 (6th Cir. 2003); *Doe v. Westerville City School Dist.*, [No. 2:07-CV-0683, 2008 WL 2323526, at *5] (S.D.Ohio June 2, 2008)). Because the City is also a named defendant in Plaintiffs' actions, pursuing their claims against City employees in their official capacities is redundant. "By eliminating the redundant claims . . ., this Court is merely simplifying the litigation in a manner that does not cause any prejudice to Plaintiffs." *Id.* The claims against the City employees in their official capacities are **DISMISSED**.

In the case of Ms. Tyack and any John/Jane Doe employees of the Clerk's Office, Plaintiffs' claims against those individuals in their official capacities are also claims against their employing government entity. *See Ward v. City of Norwalk*, 640 F. App'x 462, 464–65 (6th Cir.

2016). However, these individuals are employed by the Franklin County Municipal Court, not the City. The Franklin County Municipal Court is not subject to suit in this action. The Court cannot be sued on the federal § 1983 claims, because it "is considered an arm of the state for the purposes of § 1983 and the Eleventh Amendment" and thus is entitled to sovereign immunity. *Id.* at 464. With respect to the state law claims, the Franklin County Municipal Court "is not *sui juris*" and thus cannot be sued in its own right. *Malone v. Ct. of Common Pleas of Cuyahoga Cty.*, 344 N.E.2d 126, 128 (Ohio 1976). Plaintiffs' official capacity claims against Ms. Tyack and any Doe employees of the Clerk's Office are **DISMISSED**.

>2.  **The individual capacity claims against Klein, Pfeiffer, Tyack, Baker-Morrish, and Doe are dismissed. Claims Five and Nine are also dismissed.**

Although Plaintiffs have sued Mr. Klein, Mr. Pfeiffer, Ms. Baker-Morrish, Ms. Tyack, and John/Jane Doe employees, these defendants are conspicuously missing from the factual background in this opinion because Plaintiffs have not identified any basis for individual liability as to these defendants. Mr. Klein and Mr. Pfeiffer supervised the City Attorney's Office, Ms. Baker-Morrish supervised the City Attorney's Office prosecutors, and Ms. Tyack supervised the Clerk's Office at the Franklin County Municipal Court. However, Plaintiffs do not allege that these individuals had any personal involvement in either of their cases.

A plaintiff must put forth sufficient facts that each defendant "through his or her own individual actions, *personally* violated [the] plaintiff's rights . . . ." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (emphasis in original). In that same vein, § 1983 does not "incorporate doctrines of vicarious liability," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986), so defendants are not automatically liable under § 1983 for the acts of those they supervised. Rather, to incur liability, defendants must have directly participated in or encouraged an

unconstitutional act. *Alexander v. Carter for Byrd*, 733 F. App'x 256, 263 (6th Cir. 2018). Because Plaintiffs fail to identify any individual actions of Mr. Klein, Mr. Pfeiffer, Ms. Baker-Morrish, Ms. Tyack, or any John/Jane Doe that personally violated any of Plaintiffs' rights, none is liable under § 1983.

For a similar reason, Mr. Klein, Mr. Pfeiffer, Ms. Baker-Morrish, Ms. Tyack, and any John/Jane Doe are not liable for any of the state tort claims. Ohio does not recognize a cause of action for tortious acts in concert. *DeVries Dairy, LLC v. White Eagle Coop. Ass'n*, 974 N.E.2d 1194, 1194 (Ohio 2012). Thus, none of these defendants can be liable even if they assisted any of the other defendants in committing one of the identified torts. *See Blake v. Wells Fargo Bank, NA*, 916 F. Supp. 2d 839, 843 (S.D. Ohio 2013) ("Ohio *does not* recognize a cause of action for civil aiding and abetting . . . .").[4] Plaintiffs also fail to allege sufficient facts to support the idea that Mr. Klein, Mr. Pfeiffer, Ms. Baker-Morrish, Ms. Tyack, or any John/Jane Doe conspired to violate their specific rights.

While Plaintiffs assert claims that appear designed to implicate the supervisors in the City Attorney's Office for their creation of or participation in what Plaintiffs allege are unconstitutional policies, that still cannot support liability against these individual defendants. Claims alleging negligence in supervision, hiring, training, discipline, or retention, or claims alleging that there exists an unconstitutional policy, are claims against the municipality, not claims against individual municipality employees or officials. *See Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647–48 (6th Cir. 2012); *Phillips v. Roane Cty.*, 534 F.3d 531, 543–44 (6th Cir. 2008). In the case of the supervisors in the Clerk's Office, any unconstitutional policy claims can

---

[4] Plaintiffs make no allegation of vicarious liability, so the Court does not address that possibility.

only be asserted against the Franklin County Municipal Court, which is immune from liability, as explained above.

Plaintiffs fail to plead any *specific* acts by these *specific* defendants that demonstrate negligence in supervision, training, etc. Claims Five and Nine are thus properly brought against the City, rather than these individual defendants. *See Heyerman*, 680 F.3d at 647; *Phillips*, 534 F.3d at 543. Finding an absence of a basis in the pleadings to sustain them, Plaintiffs' Claims Five and Nine are **DISMISSED**. Similarly, because Plaintiffs fail to allege any specific unlawful acts committed by Mr. Klein, Mr. Pfeiffer, Ms. Baker-Morrish, Ms. Tyack, or any John/Jane Doe, Plaintiffs' claims against these defendants in their individual capacities are also **DISMISSED**.

> **3.      Defendants Tobias, Lippman, Steinberg, Clymer, and Wander are absolutely immune from suit. All claims against them are, therefore, dismissed.**

Messrs. Tobias, Steinberg, Clymer, and Wander and Ms. Lippman all assert that they are immune from suit due to the absolute immunity bestowed upon prosecutors[5] acting within the scope of their prosecutorial duties. "When performing functions that are 'intimately associated with the judicial phase of the criminal process,' prosecutors are absolutely immune from civil suits." *Red Zone 12 LLC v. City of Columbus*, 758 F. App'x 508, 513 (6th Cir. 2019) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). However, the immunity is qualified when

---

[5] "In determining whether an official is entitled to prosecutorial immunity, th[e] court employs a 'functional approach' and looks to the 'nature of the function performed, not the identity of the actor who performed it.'" *Red Zone 12 LLC v. City of Columbus*, 758 F. App'x 508, 513 (6th Cir. 2019) (quoting *Cooper v. Parrish*, 203 F.3d 937, 944 (6th Cir. 2000)). Courts have granted immunity to interns supervised by otherwise-immune government officials in the same manner as their supervisors. *See, e.g.*, *Bradley v. City of Ferndale*, 148 F. App'x 499, 509–10 (6th Cir. 2005) (reversing district court's denial of police intern's motion for summary judgment on grounds of qualified immunity); *Torcivia v. Suffolk Cty.*, 409 F. Supp. 3d 19, 49 (E.D.N.Y. 2019) (finding that social worker intern who acted at direction of governmental supervisors was entitled to qualified immunity). Thus, although Mr. Clymer is not an attorney, he is treated the same as the attorneys supervising him for purposes of the absolute immunity analysis.

performing functions that are "investigative" or "administrative" and, thus, "more removed from the judicial process." *Id.* If a prosecutor is absolutely immune, it is irrelevant to the analysis whether he or she has acted improperly, unethically, or even illegally. *Id.* at 514. Absolute immunity means absolute immunity.

Included within a prosecutor's core duties are the duties involved in "the initiation and prosecution of a lawsuit on behalf of the government" as well as any "actions that are 'preliminary to the initiation of a prosecution' and 'apart from the courtroom.'" *Id.* (quoting *Imbler*, 424 U.S. at n.33). *See also Higgason v. Stephens*, 288 F.3d 868, 878 (6th Cir. 2002) (holding that immunity extended to prosecutor's evaluation of the evidence and presentation of the evidence to the grand jury); *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000) ("[A]cts taken to prepare for the initiation of judicial proceedings . . . are protected by absolute immunity."). This includes the acts of preparing and filing charging documents. *See Red Zone*, 758 F. App'x at 514 (concluding the same for filing a civil complaint).

"The Ohio rules governing prosecutorial immunity mirror the federal rules . . . ." *Beckett v. Ford*, 384 F. App'x 435, 452 (6th Cir. 2010). Prosecutors are absolutely immune when acting in a manner that is "'intimately associated with the judicial phase of the criminal process.'" *Willitzer v. McCloud*, 453 N.E.2d 693, 695 (Ohio 1983) (quoting *Imbler*, 424 U.S. at 430). This includes a prosecutor's decision whether to initiate a prosecution. *See Moore v. Cleveland*, No. 100069, 2014 WL 1327910, at *7 (Ohio Ct. App. Apr. 3, 2014); *Hawk v. Am. Elec. Power Co.*, No. 1-04-65, 2004 WL 2980656, at *3 (Ohio Ct. App. Dec. 27, 2004).

The only involvement of Ms. Lippman, Mr. Steinberg, and Mr. Wander in Plaintiffs' cases was in prosecuting these cases on behalf of the City. Plaintiffs make no allegation that these three defendants did anything beyond presenting the government's cases against them. As

prosecutors are immune for their actions in presenting a case on behalf of the government. Ms. Lippman, Mr. Steinberg, and Mr. Wander are, therefore, absolutely immune.

Plaintiffs contend that Mr. Tobias and Mr. Clymer are not entitled to absolute immunity, because their activities were administrative or investigative. (Mango Resp. to City Employees' Mot. to Dismiss, 3, Mango ECF No. 80; DaSilva Resp. to Mots. to Dismiss, 9, DaSilva ECF No. 29.) For example, Ms. Mango contends that these defendants acted in an investigative manner when they failed to investigate, or inadequately investigated, Michael's allegations. (Mango Resp. to City Employees' Mot. to Dismiss, at 3.) Despite Ms. Mango's assertion to the contrary, a prosecutor's decision to investigate or not investigate is immune from suit. *Grant v. Hollenbach*, 870 F.2d 1135, 1139 (6th Cir. 1989). This is not an "investigative" activity within the meaning of the absolute immunity case law. *See Ireland v. Tunis*, 113 F.3d 1435, 1447 (6th Cir. 1997) ("Absolute prosecutorial immunity will likewise attach to administrative or investigative acts necessary for a prosecutor to initiate or maintain the criminal prosecution.")

Ms. Mango also contends that Mr. Tobias and Mr. Clymer acted in an administrative manner when they allowed Michael, a private citizen, to sign and file the Complaints. (Mango Resp. to City Employees' Mot. to Dismiss, at 3.) This is doubly wrong. First, it overlooks the fact that someone from the City Attorney's Office was *required* to approve the Complaints before they were filed. In other words, whatever role Mr. Tobias or Mr. Clymer played in approving the Complaints was more than administrative. Indeed, their initials are on the Complaints as authorizing their filing.

Second, in terms of the absolute immunity analysis, it is splitting hairs to differentiate between a prosecutor filing a Complaint himself/herself and approving a private citizen's effort to do so. *See Payson v. Ryan*, No. 90-1873, 1992 WL 111341, at *6 (E.D. Pa. May 14, 1992)

18

(finding no difference between prosecutor's approval of filing of private citizen's complaint and the prosecutor's *sua sponte* commencement of criminal proceedings), aff'd, No. 92-1445, 983 F.2d 1051 (3d Cir. 1992). Both situations involve the initiation of a lawsuit on behalf of the government, an activity for which a prosecutor is absolutely immune. Because Mr. Tobias and Mr. Clymer acted within the scope of the duties of a prosecutor when they participated in the initiation of the Complaints filed against Plaintiffs, they are absolutely immune from suit.

Plaintiffs also argue that the City Attorney's Office is not immune because it acted in violation of Ohio Rev. Code § 2935.09(D). This misunderstands absolute immunity. When a prosecutor is absolutely immune from suit, he/she is absolutely immune from suit, even when violating the law. *Red Zone*, 758 F. App'x at 514; *see Imbler*, 424 U.S. at n.34 (explaining that while willful use by a prosecutor of perjured testimony might warrant criminal prosecution, it still cannot be the basis for civil liability).

The claims against Mr. Tobias, Ms. Lippman, Mr. Steinberg, Mr. Clymer, and Mr. Wander are **DISMISSED**.

### B. City of Columbus

#### 1. The City of Columbus is immune from state law tort claims. All such claims against the City are dismissed.

Ohio's "Political Subdivision Tort Liability Act[] sets forth a comprehensive statutory scheme for the tort liability of political subdivisions and their employees." *McConnell v. Dudley*, 144 N.E.3d 369, 375 (Ohio 2019). A political subdivision is generally not liable in tort for the acts or omissions of the political subdivision, or its employees. Ohio Rev. Code Ann. § 2744.02(A)(1) (West 2020). However, there are five exceptions to this baseline immunity. *McConnell*, 144 N.E.3d at 376. The first four—which involve roads, defective buildings, the

operation of a motor vehicle, and the government's performance of "proprietary functions"[6] —
clearly do not apply. *See Ohio Rev. Code Ann.* § 2744.02(B). The fifth is a catchall exception
that provides for a political subdivision's immunity where liability is otherwise imposed under
Ohio law. *See Ohio Rev. Code Ann.* § 2744.02(B)(5). Plaintiffs do not point to any such
provision in Ohio law, nor do they argue that any of the exceptions applies. Instead, Ms. Mango[7]
points to Ohio Rev. Code § 2744.03(A)(6) (Mango Resp. to City's Mot. to Dismiss, at 28),
which applies to the potential immunity of government *employees*, not to a government entity
itself. *Fabrey v. McDonald Vill. Police Dep't*, 639 N.E.2d 31, 35 (Ohio 1994). *See also* Ohio
Rev. Code Ann. § 2744.03(A)(6) (West 2020) ("[T]he *employee* is immune from liability unless
one of the following applies . . . ." (emphasis added)). Accordingly, the City is immune from
liability as to all of Plaintiffs' state law tort claims. (*See* Section IV.B.2.b., *infra*, for further
discussion of Plaintiffs' state law malicious prosecution claims.) All of the state law claims
against the City are, therefore, **DISMISSED**.

### 2. Section 1983 Claims and Malicious Prosecution

The City's immunity from state law torts does not extend to Plaintiffs' § 1983 claims. *See
Owen v. City of Independence*, 445 U.S. 622, 657 (1980) (holding that municipalities have no
immunity from damages liability for constitutional violations). Those claims are premised on
purported violations of Plaintiffs' First Amendment rights of association, their Fourth
Amendment rights, and their Fourteenth Amendment procedural and substantive due process
rights.

---

[6] Prosecution is explicitly defined as a "governmental function," as distinguished from a "proprietary function." Ohio Rev. Code Ann. § 2744.01(C)(2)(f) (West 2020).

[7] Ms. DaSilva does not address the issue of the City's immunity.

### a. Plaintiffs plead no plausible violation of their First Amendment rights.

The Constitution protects two separate rights of association—the right to intimate association and the right to expressive association. *Johnson v. City of Cincinnati*, 310 F.3d 484, 498 (6th Cir. 2002). The former "stems from the necessity of protecting individuals' ability 'to enter into and maintain certain intimate human relationships [that] must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme.'" *Id.* (alteration in original) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984)). The latter "protects associations maintained 'for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion.'" *Dade v. Baldwin*, 802 F. App'x 878, 882 (6th Cir. 2020) (quoting *Roberts*, 468 U.S. at 618).

Plaintiffs make no plausible allegation of a violation of their right to expressive association, so the Court assumes that they have intended to plead a violation of their rights to intimate association. However, this is a right protected by the Fourteenth—*not* the First— Amendment. *See Hartwell v. Houghton Lake Cmty. Sch.*, 755 F. App'x 474, 478 (6th Cir. 2018). Plaintiffs thus plead no plausible First Amendment violation. (*See* Section IV.B.2.d., *infra*, for a discussion of the right to intimate association.) The City's Motions to Dismiss Plaintiffs' § 1983 claims based on First Amendment violations are **GRANTED**.

### b. Plaintiffs' federal malicious prosecution claim under the Fourth Amendment fails, as does its state law malicious prosecution claim.

Plaintiffs both plead violations of their Fourth Amendment "right[s] to be free from search and seizure . . . ." (Mango Am. Compl. ¶ 113; DaSilva Am. Compl. ¶ 117.) This appears to be their vehicle for asserting a federal malicious prosecution claim (*see* Mango Am. Compl. ¶

114; DaSilva Am. Compl. ¶ 118), which is cognizable only under the Fourth Amendment. *See Davis v. Gallagher*, 951 F.3d 743, 752 (6th Cir. 2020). The Court thus construes Plaintiffs' Fourth Amendment claims as federal malicious prosecution claims. Plaintiffs also allege that Defendants committed a malicious prosecution tort under Ohio law.

A Fourth Amendment malicious prosecution claim requires a plaintiff to prove four things. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010). First, that a criminal prosecution was initiated against her "and that the defendant 'made, influenced, or participated in the decision to prosecute.'" *Id.* at 308 (quoting *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007)). Second, the prosecution lacked probable cause. *Id.* Third, "the plaintiff suffered a 'deprivation of liberty,' as understood in our Fourth Amendment jurisprudence, apart from the initial seizure." *Id.* at 308–09 (quoting *Johnson v. Knorr*, 477 F.3d 75, 81 (3d Cir. 2007)). And fourth, the criminal proceeding was resolved in the plaintiff's favor. *Id.* at 309.

To prove the tort of malicious prosecution under Ohio law, a plaintiff must prove that 1) a prosecution was instituted or continued with malicious intent, 2) the prosecution lacked probable cause, and 3) the prosecution was termination in the plaintiff's favor. *Trussell v. Gen. Motors Corp.*, 559 N.E.2d 732, 735 (Ohio 1990).

Although the elements necessary to prove malicious prosecution differ under federal and Ohio law, both require a plaintiff to prove that the prosecution was terminated in her favor. This element is similarly interpreted under federal and Ohio law. Under federal law, the plaintiff must show that dismissal of her case "indicates that [she] may be innocent of the charges or that a conviction has become improbable." *Jones v. Clark Cty.*, 959 F.3d 748, 765 (6th Cir. 2020) (internal citation and quotation marks omitted); *accord Parnell v. City of Detroit*, 786 F. App'x 43, 51 (6th Cir. 2019). Dismissals other than on the merits are not considered to be resolutions in

the plaintiff's favor. *See, e.g.*, *Nouri v. Cty. of Oakland*, 615 F. App'x 291, 300 (6th Cir. 2015) (noting that convictions dismissed as a part of a plea deal were not resolutions in plaintiff's favor); *Thornton v. City of Columbus*, 171 F. Supp. 3d 702, 710 (S.D. Ohio 2016) (citing *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir. 1980)) (concluding that charges dropped after a jury hung in favor of acquittal likely were not resolved in plaintiff's favor). Likewise, Ohio law requires that the plaintiff "demonstrate that he was absolved of any wrongdoing." *Palshook v. Jarrett*, 32 F. App'x 732, 735 (6th Cir. 2002); *accord Ash v. Ash*, 651 N.E.2d 945, 947 (Ohio 1995) ("A proceeding is 'terminated in favor of the accused' only when its final disposition indicates that the accused is innocent."). This requires a favorable adjudication on the merits. *Palshook*, 32 F. App'x at 736; *Broadnax v. Greene Credit Serv.*, 694 N.E.2d 167, 171 (Ohio Ct. App. 1997).

Neither of Plaintiffs' cases was adjudicated on the merits. Ms. Mango's case was dismissed for failure to comply with the procedures in Ohio Rev. Code § 2935.09(D). Ms. DaSilva's first case was voluntarily dismissed by the City Attorney's Office. After the charges were re-filed, they were dismissed for violating Ms. DaSilva's rights to a speedy trial. None of these dismissals indicates that Ms. Mango or Ms. DaSilva was innocent of the charges, and thus these cases were not resolved in Plaintiffs' favor.

In response to the case law, which is decidedly in Defendants' favor, Plaintiffs primarily resort to rhetoric, arguing that allowing a malicious prosecution claim to proceed "is mandated by common sense" and "fairness." (Mango Resp. to City's Mot. to Dismiss, at 22; DaSilva Resp. to Mots. to Dismiss, at 19.) Plaintiffs also argue that because the cases were in fact resolved in their favor, considering that 1) they were dismissed over the government's "opposition," 2) there was "a full hearing on the procedural shortcomings pertaining to the institution of the

proceedings," and 3) the City Attorney's Office could have refiled the charges but chose not to do so. (Mango Resp. to City's Mot. to Dismiss, at 21; DaSilva Resp. to Mots. to Dismiss, at 18.) But, Plaintiffs are unable to cite a single case where a dismissal on procedural or speedy trial grounds was found to be an adjudication on the merits. What's more, neither Plaintiff grapples with the binding precedent that says, in no uncertain terms, that both federal and Ohio law require a final disposition indicative of the plaintiff's innocence.

The manner in which Plaintiffs' cases were dismissed simply does not indicate their innocence. Ms. Mango's case would have been equally subject to dismissal on procedural grounds regardless of her guilt on the underlying charges. And the speedy trial violation in Ms. DaSilva's case had nothing to do with factual guilt or innocence. Because neither plaintiff can prove that her criminal proceedings were resolved in her favor—an essential element of a malicious prosecution claim under federal and state law—the Court need not analyze the remaining elements of the claims. Plaintiffs' malicious prosecution claims under the Fourth Amendment and state law fail. The City's Motions to Dismiss Plaintiffs' § 1983 claims based on Fourth Amendment violations are **GRANTED**.

### c. Plaintiffs plead no plausible substantive due process claim under the Fourteenth Amendment.

There are two types of substantive due process claims: claims encompassing official acts that are never permissible regardless of any procedural safeguards that might accompany them, and claims asserting the denial of a constitutional or statutory right, privilege, or immunity. *Mertik v. Blalock*, 983 F.2d 1353, 1367 (6th Cir. 1993). The former must involve government action that "shocks the conscience." *Id.* at 1367–68 (internal quotation marks omitted). The Sixth Circuit has raised doubts as to whether conduct "outside the realm of physical abuse" can be conduct that shocks the conscience. *See Braley v. City of Pontiac*, 906 F.2d 220, 226 (6th Cir.

1990). In any event, "conduct that 'shocks the conscience' is 'conduct that is so brutal and offensive that it does not comport with traditional ideas of fair play and decency.'" *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 566 F. App'x 462, 472 (6th Cir. 2014) (some internal quotation marks omitted) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 547–48 (6th Cir. 2012)). Plaintiffs' allegations, while troubling, do not rise to the level of such brutality and offense that they could fairly be characterized as conscience shocking.

That leaves the second type of claim: the denial of a constitutional or statutory right. To begin with, a substantive due process claim of this kind requires a violation of a *federal right*. A violation of state law is not a valid predicate for a § 1983 claim. *Beckham v. City of Euclid*, 689 F. App'x 409, 414 (6th Cir. 2017). Further, a state *procedure* is only relevant in the context of a § 1983 claim to the extent it implicates a federal right. *Id. See also Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993) ("A state cannot be said to have a federal due process obligation to follow all of its procedures . . . ."), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995). Thus, even assuming, *arguendo*, that the City violated Ohio Rev. Code § 2935.09(D), the violation cannot itself form the basis of a Fourteenth Amendment substantive due process claim.

The only substantive due process violation that Plaintiffs allege is a malicious prosecution claim. (Mango Resp. to City's Mot to Dismiss, at 23–24; DaSilva Resp. to Mots. to Dismiss, at 15–16.) This is a nonstarter. As discussed in detail above, a federal malicious prosecution claim is viable under the Fourth—not the Fourteenth—Amendment. *Davis*, 951 F.3d at 752. The City's Motions to Dismiss Plaintiffs' § 1983 claims based on substantive due process violations are **GRANTED**.

**d.      Plaintiffs' procedural due process claims survive.**

A procedural due process claim requires a plaintiff to identify a deprivation of a life,

liberty, or property interest protected by the Due Process Clause and show that the state did not

afford him/her adequate procedural rights in relation to the deprivation. *Schmitt v. LaRose*, 933

F.3d 628, 642 (6th Cir. 2019), *cert. denied* No. 19-974, 2020 WL 2621728 (U.S. May 26, 2020).

To determine whether a benefit rises to the level of a protected property interest, a court looks to

"'existing rules or understandings that stem from an independent source such as state law . . . .'"

*Crosby v. Univ. of Ky.*, 863 F.3d 545, 552 (6th Cir. 2017) (quoting *Bd. of Regents v. Roth*, 408

U.S. 564, 577 (1972)).

Plaintiffs allege that they suffered a number of harms, though not all involve interests

protected by the Due Process Clause. Most of the identified harms are concomitant to the

criminal process, such as being required to report to court. But, there is no due process right "to

be free from the burdens of defending oneself against an unsuccessful prosecution . . . ."

*Richardson v. City of S. Euclid*, 904 F.2d 1050, 1054 (6th Cir. 1990). Ms. Mango argues that

there *is* such a right where the appropriate procedures were not followed in instituting the

criminal process in the first place. (Mango Resp. to City's Mot. to Dismiss, at 25.) This argument

conflates the second part of the test (the adequacy of the procedures) with the first (the existence

of a protected interest). *See Olin v. Wakinekona*, 461 U.S. 238, 250, n.12 (1983) ("Process is not

an end in itself. Its constitutional purpose is to protect a substantive interest to which the

individual has a legitimate claim of entitlement."). The bottom line is: There is no due process

right "to be free from criminal prosecution except upon [a finding of] probable cause." *Albright*

*v. Oliver*, 510 U.S. 266, 268 (1994). Plaintiffs' allegations are instead comparable to an abuse of

process claim—but, no such claim exists under federal law. *Moore v. WesBanco Bank, Inc.*, 612

F. App'x 816, 823 (6th Cir. 2015).

The incidental deprivations that Plaintiffs may have suffered due to their pending

criminal charges are not protected by the Fourteenth Amendment unless accompanied by some

other "loss beyond the inconvenience of defending themselves in court." *Richardson*, 904 F.2d at

1054. Although Plaintiffs claim to have suffered psychological, physiological, and financial

harms, these are likewise not protected by the Fourteenth Amendment. *Cf. Paul v. Davis*, 424

U.S. 693, 700–01 (1976) (declining to interpret the Fourteenth Amendment as "a font of tort

law" to be deployed "wherever the State may be characterized as the tortfeasor"); *Satkowiak v.

Bay Cty. Sheriff's Dep't*, 47 F. App'x 376, 379 (6th Cir. 2002) ("[T]he Fourteenth Amendment's

Due Process Clause does not serve as a substitute for state tort law, and it does not protect

against every injury to reputation, honor, or integrity.").

Plaintiffs also assert that they suffered harm to their reputations and their

employment/employability. For example, Ms. Mango alleges that she was placed on paid leave

from her job as a schoolteacher for ten months, and Ms. DaSilva alleges that she has suffered

harm related to her future employment prospects. These interests are not protected by the Due

Process Clause either. It is well-settled that "'a person's reputation, good name, honor, and

integrity are among the liberty interests protected by the due process clause of the fourteenth

amendment.'" *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002) (quoting *Chilingirian v. Boris*,

882 F.2d 200, 205 (6th Cir. 1989)). "But defamation alone is not enough to trigger this

constitutional protection; rather, the alleged damage must be tied to '[s]ome alteration of a right

or status previously recognized by state law.'" *Crosby*, 863 F.3d at 555 (alteration in original)

(quoting *Quinn*, 293 F.3d at 319). With respect to Ms. Mango: placing an employee on paid

27

administrative leave is not a due process violation where circumstances require the employee's suspension. *Joseph v. City of Columbus*, No. C2-04-754, 2006 WL 2795195, at *7 (S.D. Ohio Sept. 27, 2006) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 544–45 (1985)). Ms. Mango cannot succeed under that standard—it is certainly justifiable that her employer placed a schoolteacher on leave when facing allegations of child abuse. And, as to Ms. DaSilva: Ohio law does not recognize a right to future employment. *Bennafield v. City of Canton Police Dep't*, No. 87-3919, 1988 WL 90915, at *3 (6th Cir. Sept. 1, 1988); *see Chilingirian*, 882 F.2d at n.8 ("A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation.").

Finally, Plaintiffs allege a violation of their rights to intimate association with, and to parent and raise, their children. "'[T]he Constitution recognizes both a protectible procedural due process interest in parenting a child and a substantive fundamental right to raise one's child.'" *Schulkers v. Kammer*, 955 F.3d 520, 539 (6th Cir. 2020) (quoting *Bartell v. Lohiser*, 215 F.3d 550, 557 (6th Cir. 2000)). *See also Roberts*, 468 U.S. at 619 (identifying "the raising and education of children" as one component of the intimate relationship "entitled to this sort of constitutional protection") (citing *Smith v. Org. of Foster Families for Equality and Reform*, 431 U.S. 816, 843–44 (1977)). Defendants do not presently contest Plaintiffs' rights to parent and to raise their children nor that these rights were infringed upon. Rather, they dispute the cause of the infringement. For example, the City contends that any limitations on Ms. Mango's parenting rights "were not a consequence of the criminal proceedings" but rather "of an intervening and independent determination by a judge in a separate proceeding before the domestic relations court." (City's Mot. to Dismiss, at 24–25, Mango ECF No. 69.)

28

Section 1983 is to be understood against the background of standard tort liability. *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 609 (6th Cir. 2007). That includes traditional principles of proximate cause. *See id.* In analyzing whether proximate cause exists, a court must determine "whether it was reasonably foreseeable that the complained of harm would befall the § 1983 plaintiff as a result of the defendant's conduct. Even if an intervening third party is the immediate trigger for the plaintiff's injury, the defendant may still be proximately liable, provided that the third party's actions were foreseeable." *Id.*

The City relies on two cases to support their claims that there exists no proximate cause here. In the first, *Leech v. Mayer*, the plaintiff was on parole and was dating the ex-wife of the defendant, who happened to supervise the parole authority. 588 F. App'x 402, 404 (6th Cir. 2014). After the defendant reported that the plaintiff violated his parole conditions, a judge agreed that the plaintiff had violated his parole and punished him accordingly. *Id.* at 406–08. After the plaintiff sued alleging a violation of his freedom of association, the Sixth Circuit found that the defendant had committed no such violation. *Id.* at 409. This is because it was the judge who had jurisdiction over the plaintiff's early release from jail and his parole conditions, and it was in the judge's discretion how to deal with any violations. *Id.* The judge was thus an intervening cause of the plaintiff's injury, which broke the causal chain.

In the second, *Howell v. Cox*, the plaintiff sued a police officer who issued him a citation for public intoxication. 758 F. App'x 480, 482 (6th Cir. 2018). After the plaintiff failed to appear for his court date on the citation, the judge issued a bench warrant for his arrest. *Id.* The plaintiff was arrested, and later sued the ticketing officer. However, the court found that the officer could not be responsible for the arrest due to the intervening causes of the arrest—namely, the plaintiff's failure to appear and the judge's resulting issuance of a warrant. *Id.* at 483. Here, too,

the causal chain between the defendant's conduct and the plaintiff's injury was broken by an intervening event not reasonably foreseeable to the defendant.

Generally speaking, in a criminal case, a judge may commit an intervening act that breaks the causal chain when she takes an act that "is independent from any misrepresentations, omissions, or other wrongdoing by the defendant." *Id.* There was no such break in the causal chain for Ms. Mango or Ms. DaSilva.

In Ms. Mango's case, it is true that her children were removed from her home prior to the Complaints being filed against her, due to a CPO signed by a judge. But, the City Attorney's Office specifically requested that Ms. Mango 1) be ordered to comply with the CPO *and* 2) be required to "stay away" (presumably from the children). Because of the early stage of this litigation and the lack of factual development, it is not obvious that the issuance of the CPO was an independent event that broke the causal chain. For example, it is not known what the terms of the CPO were. Nor is it known whether the City's requests that Ms. Mango be required to stay away from her children prolonged or exacerbated Ms. Mango's loss of custody.

Ms. DaSilva's case is a simpler one, and indeed the City does not even argue that the causal chain was broken. (City's Mot. to Dismiss DaSilva, at 34, DaSilva ECF No. 13.) The Juvenile Division judge granted Mr. Hedges' motion for an emergency order of custody based on the Complaints that Ms. Stewart had filed—with the permission of the City—against Ms. DaSilva. Thus, Ms. DaSilva lost custody of K.H. precisely because of the City's involvement in the filing of the Complaints against her.

Because the Court concludes that Plaintiffs were deprived of their rights to associate with and raise their children, the remaining question in the analysis is whether they were afforded adequate process prior to this deprivation. "The fundamental aspects of procedural due process

are notice and an opportunity to be heard." *Huntsman v. Perry Local Sch. Bd. of Educ.*, 379 F. App'x 456, 462–63 (6th Cir. 2010). The City contends that Plaintiffs received notice of the charges against them and that they had an opportunity to have their objections to the charges heard. (City's Mot. to Dismiss Mango, at 31–32; City's Mot. to Dismiss DaSilva, at 34.) But, this argument misses the point. The relevant deprivation does not relate to the charges filed against Plaintiffs, but rather to the loss of access to their children. The question, then, is whether Plaintiffs received notice and an opportunity to be heard with respect to *that* deprivation. It is not clear that they did.

Ms. Mango alleges that the CPO hearing was *ex parte* despite her being in the same building at the time it was held. (Mango Resp. to City's Mot. to Dismiss, at 6–7.) It does not appear that Ms. Mango had any opportunity to challenge the restrictions requested by the City Attorney's Office and placed on her by the Municipal Court judge. In the case of Ms. DaSilva, the City points out that the TPO was granted only after a hearing on the motion. But, Ms. DaSilva was not present at the hearing, and it is not readily apparent whether she had notice of the hearing. It is thus not clear that either of the Plaintiffs "had an adequate opportunity to challenge" the custody decision in court. *See Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 730 (6th Cir. 2011). Given these alleged facts, it is plausible that Plaintiffs were not given adequate process prior to being deprived of their rights to parent and raise their children. Plaintiffs' related claims, therefore, survive. The City's Motions to Dismiss Plaintiffs' § 1983 claims based on procedural due process violations are **DENIED**.

### e.    DaSilva's right to travel claim survives.

Ms. DaSilva also alleges a violation of her constitutional right to travel. (DaSilva Am. Compl. ¶ 119.)  The City did not address this claim in its Motion to Dismiss. Thus, this claim

remains.

**C.    Shane, Maria, Michael, and Janet Mauger**

**1.    Shane, Maria, and Janet are protected from some—but not all—of Ms. Mango's state law claims by virtue of Ohio's crime reporting privilege.**

As an initial matter, the Maugers argue that each of Ms. Mango's claims against them are

barred under the Ohio crime reporting privilege. (Michael and Janet Mauger Mot. for J. on the

Pleadings, 4, Mango ECF No. 75; Shane and Maria Mauger Mot. for J. on the Pleadings, 5,

Mango ECF No. 76.) Statements made in judicial proceedings are absolutely privileged under

Ohio law and may not be the basis for civil liability. *M.J. DiCorpo, Inc. v. Sweeney*, 634 N.E.2d

203, 209 (Ohio 1994). This privilege "extends to every step in the proceeding, from beginning to

end[,]" including statements made in an affidavit or a statement submitted to a prosecutor for

purposes of reporting the commission of a crime, so long as those statements "bear some

reasonable relation to the activity reported." *Id.* at 209–10. Because these statements are

absolutely privileged, the motive for making the statement is irrelevant. *See id.* at 209. It is also

irrelevant to the privilege determination whether the statement is true. *Bacon v. Kirk*, No. 1-99-

33, 2000 WL 1648925, at *19 (Ohio Ct. App. Oct. 31, 2000); *see DiCorpo*, 634 N.E.2d at 209.

Accordingly, statements made by the Maugers at any stage of a judicial proceeding

cannot be the basis for any of Ms. Mango's state law claims. That includes statements made by

the Maugers to the City Attorney's Office, as well as statements made by Maria as a part of the

proceedings to obtain the CPO. Nonetheless, the privilege does not fully absolve the Maugers of

liability. First, the Court can find no indication that the privilege applies to prevent liability under

a § 1983 claim. *Cf. Bower v. Village of Marblehead, Ohio*, No. 3:18-CV-2502, 2020 WL

3487847, at *7, n.1 (N.D. Ohio June 26, 2020) (first finding that plaintiff's defamation claims

were not actionable under § 1983 and separately noting that they would also fail if pleaded as state law claims due to the crime reporting privilege).

Second, Ms. Mango's Amended Complaint seeks to hold the Maugers liable for other statements beyond those made to the City Attorney's Office or in the CPO proceedings, including those made to CPD and to FCCS. (*See, e.g.*, Mango Am. Compl. ¶ 166 ("The Maugers published false allegations of abuse and criminal behavior by Plaintiff with police, children's services agencies, prosecutors, and to the court in the criminal and domestic cases.").) These non-judicial statements are not necessarily shielded by the same privilege. Several state and federal courts in Ohio have determined, for example, that statements to police officers are entitled only to a qualified privilege. *See Dehlendorf v. City of Gahanna*, 786 F. Supp. 2d 1358, 1365 (S.D. Ohio 2011); *Scott v. Patterson*, No. 81872, 2003 WL 21469363, at *2–3 (Ohio Ct. App. June 26, 2003). The key difference between a qualified privilege and an absolute privilege is that bad faith, malice, and knowledge of falsity are irrelevant for purposes of statements that are absolutely privileged statements, but such malfeasance destroys a qualified privilege. *DiCorpo*, 634 N.E.2d at 209. In other words, if the Maugers knowingly provided false information to CPD or FCCS, those statements may not be privileged. The Maugers did not address the non-judicial statements in their Motions for Judgment on the Pleadings, so the Court does not decide what level of privilege they might be entitled to.

As previously noted, Ohio does not recognize aiding and abetting liability in the civil context. *See Blake*, 916 F. Supp. 2d at 843. Accordingly, Ms. Mango must plead specific acts committed by each defendant in order to establish a tort; grouping all of the Maugers together will not suffice. (*See, e.g.*, Mango Am. Compl. ¶ 38 ("The Maugers corresponded with Children's Services, law enforcement [and] the City Attorney . . . in furtherance of the illegal

prosecution against Plaintiff.").) Ms. Mango's only allegations specific to Maria are that she drove the children to the hospital and to the City Attorney's Office (which cannot establish a tort), and that she sought the CPO (which is absolutely privileged). Ms. Mango alleges no specific actions by Shane or Janet whatsoever. Notably, based on the allegations in the Amended Complaint, the attached exhibits, and the judicially noticed documents, only Michael communicated with the CPD or FCCS. In other words, Michael is the only defendant whose statements might sustain state law tort claims for IIED, negligence, defamation, or invasion of privacy. Janet, Maria, and Shane's Motions for Judgment on the Pleadings as to these four claims are **GRANTED**. Whether these claims can proceed as against Michael requires further analysis.

### 2. State Law Claims

#### a. Ms. Mango's intentional infliction of emotional distress claim can proceed against Michael.

An IIED claim requires proving "'(1) that the actor either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) that the actor's actions were the proximate cause of the plaintiff's psychic injury, and (4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable man could be expected to endure it.'" *Ondo v. City of Cleveland*, 795 F.3d 597, 611–12 (6th Cir. 2015) (quoting *Burkes v. Stidham*, 668 N.E.2d 982, 989 (Ohio Ct. App. 1995)). The "extreme and outrageous" standard is narrowly defined and is difficult to meet. *Id.* at 612. The Ohio Supreme Court has described this difficult standard as follows:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

> Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 453 N.E.2d 666, 671 (Ohio 1983) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)), *abrogated on other grounds by Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2007).

Michael argues that Ms. Mango's IIED claim must be dismissed for three reasons—1) an IIED claim cannot be based on an action someone is legally entitled to perform, 2) filing a complaint without more is insufficient to support a claim for IIED, and 3) Ms. Mango establishes insufficient facts to support an IIED claim. (*See* Michael and Janet Mauger Mot. for J. on the Pleadings, at 12–14.) All three arguments fail.

Michael's first two arguments rest on the erroneous assumptions that Ms. Mango alleges no other actions by Michael beyond his filing of the Complaint and that she alleges that Michael did nothing illegal. In fact, Ms. Mango alleges that Michael falsely told the police and FCCS that she had abused her children. He did not have the legal right to lie to the police or to FCCS, and he did more than merely file a Complaint by notifying law enforcement and FCCS. In addition, the case that Michael cites for the proposition that an IIED claim requires more than filing a complaint is inapt. (*Id.*, at 14.) That case dealt with the filing of a *lawsuit* (i.e., a civil complaint filed in court) involving a breach of contract. *See Sears Roebuck & Co. v. Swaykus*, No. 02 JE 8, 2002 WL 31859516, at *2 (Ohio Ct. App. Dec. 11, 2002). Filing a breach of contract lawsuit is a far cry from falsely accusing a mother of abusing her child.

As to Michael's third argument, Ms. Mango does plead sufficient facts to support a claim for IIED. She alleges that Michael intentionally made numerous false allegations that Ms. Mango had abused her children in order to take away her custody rights. These allegations are indeed outrageous and would rightly cause any mother serious anguish.

Michael's Motion for Judgment on the Pleadings as to the IIED claim is **DENIED**.

### b. Ms. Mango's negligence claim fails.

Ms. Mango states that Michael owed her "a duty of due care in raising allegations of abuse against the Plaintiff with government agencies, the courts, police, and prosecutors." (Mango Am. Compl. ¶ 152.) This is a "[t]hreadbare recital[]" of one of the elements of the cause of action and is entitled to no weight. *Iqbal*, 556 U.S. at 678. Most importantly, neither in her Amended Complaint nor in her briefing does Ms. Mango ever identify any facts to support her claim that Michael did owe her a duty of care in this context.

Indeed, the Court is skeptical that Michael owed such a duty, since the Ohio Supreme Court has specifically declined to recognize a negligence claim in an adjacent context. *See Foley v. Univ. of Dayton*, 81 N.E.3d 398, 401 (Ohio 2016) (declining to recognize the tort of negligent misidentification in the context of an erroneous police report). In fact, the Ohio Supreme Court suggested that the only tort Ohio recognizes for misuse of civil or criminal process is malicious prosecution and that the only other torts appropriate for "seeking redress for an injury caused by another's false reporting of a crime" are defamation, wrongful or false arrest or imprisonment, and false light invasion of privacy. *See id.* at 401–02. Michael's Motion for Judgment on the Pleadings as to the negligence claim is **GRANTED**.

### c. Ms. Mango's defamation and invasion of privacy claims also fail.

The statute of limitations for defamation is one year, and it begins to run at the time the words are written or spoken. Ohio Rev. Code Ann. § 2305.11(A) (West 2020); *Glass v. Glass*, No. 02CA704, 2003 WL 22006807, at *4 (Ohio Ct. App. Aug. 13, 2003.) Thus, because Ms. Mango filed her Complaint on July 18, 2019, unless the statute of limitations was tolled, she can

only sue for defamation for any statements made in July 2018 or later. However, Ms. Mango identifies no allegedly defamatory statements made during this time frame.

Ms. Mango does not dispute the application of the statute of limitations. (Mango Resp. to Mots. for J. on the Pleadings, at 21–22, Mango ECF No. 88.) Her only argument in response is that, because the statute of limitations is tolled while someone is in prison, and because Shane was imprisoned during at least some of the relevant time frame, the statute of limitations should be tolled not only for him but for his alleged co-conspirators. (*Id.* (citing Ohio Rev. Code Ann. § 2305.15(B) (West 2020)).) This argument fails for two reasons. First, the statute itself makes clear that it applies only to "any action *against the imprisoned person*." Ohio Rev. Code Ann. § 2305.15(B) (emphasis added). Second, while the statute of limitations may have been tolled with respect to Shane, Ms. Mango has not identified any allegedly defamatory statements that Shane made. The Maugers' Motions for Judgment on the Pleadings as to the defamation claim are **GRANTED**.

Michael and Janet Mauger next argue that, although Ms. Mango pleads separate defamation and invasion of privacy claims, the defamation statute of limitations applies to the invasion of privacy claim, too. (*See* Michael and Janet Mauger Mot. for J. on the Pleadings, at 15–16.) Ms. Mango does not respond to this argument. Michael and Janet are correct.

In determining the appropriate statute of limitations, the court "must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded." *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984). Here, the substance of the defamation and invasion of privacy claims are identical, and that substance must control. Every defamation claim can be pleaded as an invasion of privacy claim, and if this opportunity for alternative pleading were to carry the day, it "would essentially eliminate the one-year statute of

limitations for defamation claims . . . ." *Murray v. Moyers*, No. 2:14-CV-02334, 2015 WL 5626509, at *4 (S.D. Ohio Sept. 24, 2015). Thus, the statute of limitations on the invasion of privacy claim has also run. Finally, even if the statute of limitations were tolled for Shane while he was in prison, as with the defamation claim, Ms. Mango alleges no statements made by Shane that cast her in a false light. *See Welling*, 866 N.E.2d at 1057–58 (outlining elements of an invasion of privacy claim). The Maugers' Motions for Judgment on the Pleadings as to the invasion of privacy claim are **GRANTED**.

> **d.  Ms. Mango's state law conspiracy claim can proceed against Michael, Shane, and Maria.**

A civil conspiracy under Ohio law requires proof of 1) a malicious combination by 2) at least two people, 3) an injury, and 4) the existence of an unlawful act that is independent from the conspiracy itself. *See Renner v. E. Mfg. Corp.*, No. 2001-P-0135, 2002 WL 31744760, at *7 (Ohio Ct. App. Dec. 6, 2002). The Maugers argue that the conspiracy claim must fail because all of Ms. Mango's other claims fail—in other words, there was no independent unlawful act. (Michael and Janet Mauger Mot. for J. on the Pleadings, at 17; Shane and Maria Mauger Mot. for J. on the Pleadings, at 19.)

The Maugers' argument is unconvincing for two reasons. First, the Court has allowed the IIED claim against Michael to proceed, which can predicate a civil conspiracy claim. Second, Ohio law recognizes a tort claim for damages caused by a criminal act. *See Jacobson v. Kaforey*, 75 N.E.3d 203, 205 (Ohio 2016) (citing Ohio Rev. Code Ann. § 2307.60 (West 2020)). Ms. Mango alleges that the Maugers committed multiple crimes, including making false statements and interference with custody. (*See* Mango Resp. to Mots. for J. on the Pleadings, at 23.) Michael, Shane, and Maria's Motions for Judgment on the Pleadings as to the conspiracy claim are **DENIED**.

Ms. Mango has offered no evidence, however, that Janet entered into a malicious combination with anyone. Janet's Motion for Judgment on the Pleadings as to the conspiracy claim is **GRANTED**.

### 3. Section 1983 Claims

Ms. Mango's § 1983 claims are also asserted against the Maugers. These claims are based on alleged violations of Ms. Mango's rights under the First, Fourth, and Fourteenth Amendments. For the same reasons set forth above with respect to the City, Ms. Mango's § 1983 claims against the Maugers cannot proceed on the basis of violations of her rights under the First Amendment, Fourth Amendment, or her substantive due process rights under the Fourteenth Amendment. (*See* Sections IV.B.2.a.–c., *supra*.) Before considering whether Ms. Mango's remaining § 1983 claim—based on her right to procedural due process under the Fourteenth Amendment—can proceed against the Maugers, the Court addresses the Maugers' arguments that they cannot be held liable under § 1983 because they are not state actors.

### a. Michael is a "state actor" for purposes of § 1983; Shane, Maria, and Janet are "state actors" for purposes of § 1985.

Although § 1983 applies only to state actors, "there are circumstances under which private persons may, by their actions, become 'state actors' for § 1983 purposes." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). "[A] private party can fairly be said to be a state actor if (1) the deprivation complained of was 'caused by the exercise of some right or privilege created by the State' and (2) the offending party 'acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.'" *Id.* at 590–91 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). There are three tests used to evaluate whether a private party can fairly be said to be a state actor—the public function test, the state compulsion test, and the nexus test. *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir.

39

1995). Under the public function test, a private party is considered a state actor if he/she exercises powers traditionally reserved exclusively to the state. *Id.* Next, "[t]he state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party . . . to take a particular action . . . ." *Id.* And, finally, "the nexus test requires a sufficiently close relationship . . . between the state and the private actor so that the action taken may be attributed to the state." *Id.* Private persons are also considered to be acting under color of law when they conspire with state actors to violate a constitutional right. *Revis v. Meldrum*, 489 F.3d 273, 292 (6th Cir. 2007).[8]

Prosecuting crime is a core governmental function.[9] *See* Thomas W. Merrill, *The Disposing Power of the Legislature*, 110 Colum. L. Rev. 452, 460 (2010) ("[A] general consensus emerged [in American history] that prosecution is a public function."); *cf. United States v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."). It is difficult to find instances of private citizens so deeply involved in the initiation of a criminal prosecution as Ms. Mango alleges was the case here. Indeed, this country abolished the use of private prosecutors some time ago. *See* Merrill, *supra*, at 460. Given this history, there can be no doubt that a private citizen who initiates a prosecution is a state actor under the public function test. *Cf. Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019) (finding that private forensics investigators were state actors where prosecutor "delegated a public function" by hiring them to investigate crime scene on behalf of law enforcement). To declare otherwise would allow a

---

[8] It appears that, in addition to a § 1983 action, Plaintiffs intended to sue under the civil rights conspiracy statute, 42 U.S.C. § 1985. (*See* Mango Am. Compl. ¶ 116; DaSilva Am. Compl. ¶ 123.) Although Plaintiffs failed to cite to this specific statute, the error is not fatal to their claim. *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

[9] The State of Ohio has recognized as much by defining prosecutorial activities as a "governmental function" for purposes of the Political Subdivision Tort Liability Act. *See* Ohio Rev. Code Ann. § 2744.01(C)(2)(f).

government to farm out its prosecutorial power with impunity. *Cf. Carl v. Muskegon Cty.*, 763

F.3d 592, 597–98 (6th Cir. 2014) ("[F]inding no state action [ ] would incentivize the state to

contract out, piece by piece, features of its prison health care system.").

To be sure, Ohio Rev. Code § 2935.09(D) requires all Complaints to be filed by a

prosecutor even if they are initiated by a private citizen. Regardless of what the statute requires,

Ms. Mango alleges not only that Michael initiated the filing of the Complaints but that <u>he</u>

<u>himself filed them</u> with the deputy clerk, thereby launching the criminal process. *See Dixon v.*

*Hunt*, No. 1:19-CV-338, 2020 WL 772742, at \*3 (S.D. Ohio Feb. 18, 2020) (noting that the

filing of a complaint initiates prosecution). Whether or not this complied with Ohio Rev. Code

§ 2935.09(D), the filing of a Complaint by a private citizen is significant involvement in the

State's criminal process, one normally reserved for a prosecutor (i.e., the government).

It is true that merely providing information to the police "does not expose a private

individual to liability for actions taken 'under color of law.'" *Moldown v. City of Warren*, 578

F.3d 351, 399 (6th Cir. 2009); *see also Tahfs*, 316 F.3d at 591 ("Generally, a private party's mere

use of the State's dispute resolution machinery, without the overt, significant assistance of state

officials, cannot be considered state action." (internal quotation marks and alterations omitted)).

The Maugers also point to *Collins v. Clancy* as a case that purportedly stands for the proposition

that a private citizen's role in the criminal process does not expose that citizen to liability.

(Michael and Janet Mauger Mot. for J. on the Pleadings, at 9; Shane and Maria Mauger Mot. for

J. on the Pleadings, at 9–10.) But *Collins* is not on point. In *Collins*, a private individual, Donna

Kauffung, complained to the police that her ex-boyfriend was stalking her and had violated a

temporary protection order, and she signed a criminal complaint form that the police had filled

out. *Collins v. Clancy*, No. 1:12-CV-152-HJW, 2014 WL 1653103, at \*2 (S.D. Ohio Apr. 23,

2014). But, after Ms. Kauffung signed the complaint, the police filed the complaint with the

clerk's office—not Ms. Kauffung. *See Collins v. Clancy*, No. 1:12-CV-152, 2014 WL 197839, at

*3 (S.D. Ohio Jan. 15, 2014), *report and recommendation adopted by*, 2014 WL 1653103.

Because Ms. Kauffung did nothing more than submit a complaint to the police, it is not

surprising that the court ultimately concluded Ms. Kauffung was not a state actor for purposes of

§ 1983. *See Collins*, 2014 WL 1652103, at *5.

 Ms. Mango alleges that Michael did more than complain to authorities, and she alleges

that he did more than fill out a form. Ms. Mango alleges that Michael himself filed the criminal

charges in her case, a quintessential government act. That distinction is a significant one, and it is

determinative in the context of the public function test. The relationship between Michael and

the City Attorney's Office was also sufficiently close, and their actions so intertwined, that, even

if Michael was not himself performing a public function, his actions were attributable to the state

for purposes of the nexus test. Therefore, Michael is a state actor for purposes of § 1983.

 On the other hand, none of Ms. Mango's allegations with respect to Janet, Shane, or

Maria satisfy any of the three state action tests. Ms. Mango does not allege that Janet, Shane, or

Maria took any actions beyond that of a private citizen, such as telephone calls, taking the

children to the hospital and the City Attorney's Office, and filing the CPO. Nonetheless, Ms.

Mango has sufficiently pleaded that Janet, Shane, and Maria conspired with Michael—a state

actor—and, thus, may be liable as a part of a civil rights conspiracy. Janet, Shane, and Maria are,

therefore, state actors for purposes of a § 1985 conspiracy only.

### b. Ms. Mango's procedural due process claim survives as to Michael, Shane, and Maria.

 The Court previously concluded that Ms. Mango may proceed against the City on her

§ 1983 claim related to an alleged violation of her procedural due process rights prior to being

deprived of her right to intimate association with, and to parent and raise, her children. The Maugers adopted the City's argument that any limitations on Ms. Mango's parenting rights "were not a consequence of the criminal proceedings" but rather "of an intervening and independent determination by a judge in a separate proceeding before the domestic relations court." (City's Mot. to Dismiss Mango, at 24–25. *See also* Michael and Janet Mauger Mot. for J. on the Pleadings, at 6.) Just as the City failed to persuade the Court that the CPO constituted an intervening act, the Maugers similarly fail.

As noted above, a judge may commit an intervening act that breaks the causal chain when he/she takes an act that "is independent from any misrepresentations, omissions, or other wrongdoing by the defendant." *Howell*, 758 F. App'x at 483. However, approximately one week before the CPO was ordered, Michael contacted FCCS, which contributed to FCCS opening an investigation. The Franklin County Municipal Court judge who restricted Ms. Mango's visitation with the children ordered that her visitation be restricted in accordance with the recommendations of FCCS, regardless of the CPO. At this stage, it is unclear whether Michael's call to FCCS prolonged or exacerbated Ms. Mango's loss of custody.

The Court is also skeptical that the issuance of the CPO is as independent from the filing of the Complaints as the Maugers contend. Ms. Mango alleges that Maria sought the CPO in conjunction with Michael's first complaint to the City Attorney's Office. Ms. Mango further alleges that Maria dragged out the CPO proceedings, which prolonged Ms. Mango's custody deprivation. It is thus not clear that the CPO proceedings are necessarily an independent act that breaks the causal chain.

The facts cited above also indicate that Maria acted in concert with Michael to perpetuate the alleged harm. Ms. Mango alleges that Shane played a role, as well—specifically, that he

43

urged Michael to file the criminal charges. (Mango Am. Compl. ¶ 34.) Michael, Maria, and Shane's Motion for Judgment on the Pleadings as to Ms. Mango's § 1983 procedural due process claim is **DENIED**.

Ms. Mango fails to make any specific allegations against Janet that plausibly indicate Janet's involvement in the conspiracy. As a result, Janet's Motion for Judgment on the Pleadings as to Ms. Mango's § 1983 procedural due process claim is **GRANTED**.

## V.    CONCLUSION

For the reasons set forth above, the Motions to Dismiss filed by Defendants Columbus City Attorney, Zachary Klein, Richard Pfeifer, Robert Tobias, Allison Lippman, Stephen Steinberg, Lara Baker-Morrish, Brice Clymer, Lori Tyack, and the John/Jane Does are **GRANTED**. (Mango ECF Nos. 69, 70, 71, 72; DaSilva ECF Nos. 14, 15.) The Motions to Dismiss filed by Defendant City of Columbus are **GRANTED IN PART** and **DENIED IN PART**. (Mango ECF No. 69; DaSilva ECF No. 13.) The Motions for Judgment on the Pleadings filed by Michael Mauger, Shane Mauger, and Maria Mauger are **GRANTED IN PART** and **DENIED IN PART**. (Mango ECF Nos. 75, 76.) The Motion for Judgment on the Pleadings filed by Janet Mauger is **GRANTED**. (Mango ECF No. 75.)

Ms. Mango's remaining claims are as follows: § 1983 claim against the City and against Michael based on an alleged violation of her right to intimate association with, and to parent and raise, her children, in violation of the Fourteenth Amendment's Procedural Due Process Clause; a § 1985 conspiracy claim against the City and against Michael, Shane, and Maria involving the same conduct; for IIED against Michael; and Conspiracy against Michael, Shane, and Maria.

Ms. DaSilva's remaining claims are § 1983 and § 1985 claims against the City based on the alleged violation of her right to intimate association with, and to parent and raise, K.H., in violation of the Fourteenth Amendment's Procedural Due Process Clause, as well as a violation

44

of her constitutional right to travel. In addition, all claims against Corey Hedges remain.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**