## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**COURTNEY MANGO,**

          **Plaintiff,**

   **v.**

**CITY OF COLUMBUS,** *et al.*,

                              **:**

   **Defendants.**

**JANINNY DASILVA,**

          **Plaintiff,**     **:**

   **v.**

**CITY OF COLUMBUS,** *et al.*,


   **Defendants.**

**Case Nos. 2:19-cv-3120, 2:19-cv-5282**
**Judge Sarah D. Morrison**
**Magistrate Judge Chelsey M. Vascura**

### <u>OPINION AND ORDER</u>

These cases arise from private citizens filing criminal complaints against

Courtney Mango and Janinny DaSilva for domestic violence and assault.

Defendants Shane, Maria, and Michael Mauger and the City of Columbus move for

1

summary judgment. (ECF Nos. 180, 183, 186, 201, 202, 203.)[1] Oppositions and Replies have been filed. (ECF Nos. 204, 208–12.) Being fully advised, the Court **GRANTS** each motion in part and **ORDERS** further briefing.

## I.    BACKGROUND

### A.    Courtney Mango

Janet and Michael Mauger are married and have a son, Shane.[2] Shane Mauger and Courtney Mango had two sons[3] ("the Children") during their marriage. After their divorce, they shared custody of the Children until Shane was imprisoned; at that point, the Children resided with Courtney. Courtney married Dominic Mango. Shane married Maria Mauger.

On November 1, 2017, Child A was at Courtney's home. (ECF No. 166, PageID 4417.) He testified the following happened that day:

> A. So it was the night after Halloween trick-or-treat. My mom didn't take me and my brother to school that day. I don't remember why she didn't. But we went to go get hot chocolate at McDonald's. I asked for something, and she got mad. We were in the car. We drove back to the house. I got out of the car, and she was screaming at me, and I just kind of knocked on the window of her car and told her to stop. Then I walked inside to the mud room where you enter the house from the garage. She bumped me with her car, the front end where the license plate is. Then I banged on her window again, told her to stop. She got mad, got out of her car, chased me into the mud room, ran into the house from the garage, tackled me, started choking me. I got away from her and ran upstairs into my room and tried to shut the door. She followed me into my room, tackled me again on the floor, started

---

[1] Pursuant to the Court's May 27, 2020 Order, all filings were filed in 19-cv-3120 only. (ECF No. 87.) Therefore, all citations are to that case unless otherwise noted.

[2] Janet was a defendant but all claims against her were dismissed so the recitation of facts omits her actions.

[3] Both sons are minors. The Court therefore refers to them as "Child A" and "Child B."

choking me. And I was near the wall so I was trying to kind of kick out
from under to try to get away. I was kicking the wall to try to get out
from under, and that's when she elbowed me in my leg.
Q. Okay. And what happened after she elbowed you in the leg?
A. I believe my brother was there and yelled at her to stop, and I kind
of backed away and told her to stop, like, calm down.
Q. Did she stop then?
A. Yeah. . . .

*Id*. at 4417–18. Child B observed those events. *Id*. at 4418.

On November 8, 2017, the Children went to Maria's home for a three-hour
scheduled visit with Janet and Michael, after which the Children were to return to
Courtney's home. *Id*. at 4419–20. Upon arriving, Child A told Michael what
happened the previous week at Courtney's house. (ECF No. 160, PageID 3391–95;
ECF No. 166, PageID 4421.) Michael saw a bruise on Child A's leg. (ECF No. 160,
PageID 3380, 3392.) Shane called from prison, and Child A told Shane about the
events of November 1. (ECF No. 160, PageID 3392; ECF No. 166, PageID 4421.)
Shane told Michael to call the police and take Child A to the hospital. (ECF No. 198,
PageID 4694, 4725–26.) Shane told Maria how to pursue a civil protection order
("CPO"). *Id*. at 4700–01, 4771.

Michael called the police. (ECF No. 160, PageID 3395.) When the police
arrived, Michael "highlighted what the boys" told him and stayed outside while the
police interviewed the boys. *Id*. at 339–96. The police did not file charges against
Courtney but told Michael to "make a citizen's complaint at the prosecutor's office."
*Id*. at 3396, 3406. After the police left, Michael and Maria took Child A to the
hospital. *Id*. at 3396–98. The hospital contacted Franklin County Children's

Services but Children's Services declined to investigate. (ECF No. 157, PageID 1883.) Child A was seen and released. *Id.* at 3397.

The next day, Michael and Maria took the Children to the prosecutor's office. (ECF No. 160, PageID 3396–98, 3422.) When they arrived, Courtney and Dominic were there as well. *Id.* at 3437. Michael completed a form and then, along with Child A, spoke with an intake officer. *Id.* at 3442. Michael also spoke with Assistant Prosecutor Robert Tobias. *Id.* at 3446. Attorney Tobias testified that he did not instruct or direct Michael to seek a CPO, but he provided information about how Michael could seek a CPO if he choose to do so. (ECF No. 162, PageID 3834–3846.)

### 1.    CPO

The Children left the prosecutor's office with Courtney, and Michael went to the juvenile division of the domestic relations court to seek an *ex parte* CPO. (ECF No. 160, PageID 3450–56.) Upon learning he could not petition the court for the CPO as a grandfather, he called Maria and told her she would have to ask for the order because she was the Children's stepmother. *Id.* at 3457.

Maria requested that the domestic court issue an *ex parte* CPO. (ECF No. 59-13.)  In support, she wrote a narrative about the events of November 8. (ECF No. 164, PageID 4213, 4238; ECF No. 59-13.) In the "prior proceedings" section, she listed Courtney and Shane's divorce proceedings and a criminal case with domestic violence charges against Courtney for biting one of the Children that resulted in Courtney pleading guilty to disorderly conduct. (ECF No. 59-13; ECF No. 164, PageID 4278–80; ECF No. 189, PageID 2959; ECF No. 157, PageID 1852–53.)

In support of the CPO, Maria testified under oath that she was concerned for the well-being of the Children and that she believed Child A was telling the truth about the events of November 1, 2017. (ECF No. 164, PageID 4216–17.)

The domestic court granted the CPO and ordered that Courtney have no contact with the Children and remain more than 500 feet away from both of them. (ECF No. 59-13; ECF No. 164, PageID 4238.) The CPO was originally valid through November 27, 2017 but was subsequently extended until January 17, 2018 when the case was dismissed at Maria's request. (ECF No. 59-13; ECF No. 157, PageID 1885; ECF No. 157-2.)

### 2.    Criminal Charges

Michael, Maria, and Child A went to the prosecutor's office on November 14, 2017. (ECF No. 160, PageID 3476.) An intake officer interviewed Child A about the events of November 1, 2017. *Id*.

Michael returned to the City prosecutor's office on November 16, 2017. *Id*. at PageID 3482. An employee of the City prosecutor's office gave Michael a Complaint and walked him to the Franklin County Municipal Court Clerk's office. *Id*. at 3483–84. Once there, Michael read the front page of the Complaint, swore to it, signed it, and handed it to the clerk who time-stamped the document. *Id*. at 3484–85, 3533–34.

The Complaint alleged that Courtney "did knowingly cause or attempt to cause physical harm to her minor Child [Child A], age [X], DOB [XXX], a family or household member, by means of tackling victim to the ground, choking him, and elbowing him in the left thigh" in violation of Ohio Revised Code § 2919.25(A). The

5

Complaint charged her with domestic violence and assault, both first degree misdemeanors. (ECF No. 59-1.) Michael signed as the Complainant and a deputy clerk notarized the filing. *Id*. The prosecutor's office served as the issuing officer and authorized the Complaint. (ECF No. 59-2.) Under language providing "[p]ursuant to applicable court rules, the undersigned deputy clerk has reviewed the complaint . . . and determined" the deputy clerk checked the boxes for "probable cause" and "summons to issue" and initialed the document. *Id*.

A probable cause affidavit was attached to the Complaint. Therein, Michael averred the following:

> On 11/1/17, Courtney Mango caused physical harm to her minor child, [Child A] . . . by means of tackling him to the ground, choking him, and elbowing him on the left thigh. There is a police report documenting the incident as well as medical records. There is a witness statement from the Victim's brother. There are photographs of a visible injury. The victim can positively identify the offender named in the complaint.

(ECF No. 59-3.) A deputy clerk attested to the Affidavit being sworn to and signed in front of her or him. (*Id*.)  A summons was issued to Courtney for a December 15, 2017 hearing date in Franklin County Municipal Court. (ECF No. 59-2.)

Courtney appeared at the December 2017 arraignment and pled not guilty to the charges. (ECF No. 157, PageID 1881–2; ECF No. 157-2.) The Judge ordered Courtney to follow the recommendations of Children's Services for visitation, but she could not see her Children due to the CPO. (ECF No. 157, PageID 1882–84; ECF No. 157-2.)

Courtney filed a Motion to Dismiss the criminal charges, arguing that Ohio law does not allow a private citizen to file a criminal complaint for prosecution.

(ECF No. 59-4.) Her motion was granted, and the criminal charges were dismissed in July 2018.

### 3. Remaining Claims

Courtney filed this suit in July 2019. After the Court's decision on various preliminary dispositive motions, the following claims remain: § 1983 against the City and Michael based on an alleged violation of Courtney's right to intimate association with, and to parent and raise, her Children, under the Fourteenth Amendment's Procedural Due Process Clause; § 1985 conspiracy against the City, Michael, Shane, and Maria involving the same conduct; intentional infliction of emotional distress against Michael; and conspiracy against Michael, Shane, and Maria. (ECF No. 113, PageID 1267.) The Defendants move for summary judgment on each claim.

### B. Janniny DaSilva

Janniny and Defendant Corey Hedges[4] have a minor child ("Child 1") together. (ECF No. 169, PageID 4831.) Defendant Rhiannon Stewart is the sister-in-law of the father of Janniny's other minor child.[5] (ECF No. 169, PageID 4830–31.)

### 1. April 2, 2018 Criminal Charges

On March 30, 2018, Rhiannon filled out a Complaint against Janniny in the City of Columbus Prosecutor's Office. (ECF No. 169-1, PageID 4985–86.) Rhiannon wrote that on April 5, 2017, Janniny "dragged" Child 1 to the bathroom and locked

---

[4] Default judgment only as to liability was entered for all claims against Corey. (Case No. 19-cv-5282, ECF No. 66.)

[5] All claims against Rhiannon were dismissed via the Court's September 3, 2020 Opinion and Order. (ECF No. 113.)

the door. *Id.* Mere seconds later, Rhiannon heard Janniny hitting Child 1 and screaming at him that he was an embarrassment. *Id.* Rhiannon wrote that the "beating" lasted five or six minutes. *Id.* Rhiannon asked that the matter be reviewed for criminal charges because the police who responded to the 911 call declined to arrest Janniny. *Id.* at 4841–42, 4985–86.

On April 2, 2018 Rhiannon signed a criminal Complaint charging Janniny with domestic violence and assault.[6] (ECF No. 8-1.) The Complaint stated that Janniny "on or about the 5th day of April 2017 did knowingly cause or attempt to cause physical harm to her biological son, [Child 1], DOB [X] by means of repeatedly striking him about the head, face and body." (ECF No. 169-1, PageID 4980–81.) Rhiannon also executed a probable cause affidavit stating:

> On 4/5/17 Janniny DaSilva did repeatedly strike her biological son, [X] year old [Child 1] DOB [X], about the head, face and body. There is a 911 case and a police report. There are witness statements and audio recordings of the incident. There are photographs showing visible injuries to the minor child. Rhiannon Stewart can positively identify Ms. DaSilva as the offender . . . .

*Id.* at PageID 4984. Employees of the City of Columbus Prosecutor's Office authorized the Complaint. (ECF No. 8-1, PageID 79, 81.) A deputy clerk certified that she or he had "reviewed the complaint" and determined that probable cause existed. *Id.* at 79, 81. Janniny was summoned to appear at a May 1, 2018 hearing in Franklin County Municipal Court on the charges. *Id.* at 78, 80.

---

[6] The Court may take judicial notice of public records when deciding summary judgment motions. *Wilson v. Plummer*, No. 3:12-cv-337, 2015 U.S. Dist. LEXIS 81329, at *4 (S.D. Ohio May 6, 2015) (Newman, M.J.).

Janniny appeared with counsel at the May hearing. (ECF No. 169, PageID 4847–48.) Witnesses testified and Janniny's attorney had an opportunity to question them. *Id*. at 4847–54. Janniny pled not guilty. *Id*. at 4847–48. A protection order was issued at the end of the hearing that restrained Janniny from "committing acts of abuse or threats of abuse against [Child 1] . . . ." (ECF No. 169-1, PageID at 4993.) The court ordered Janniny to have no contact with and remain more than 500 feet away from Child 1. *Id*. 4993–99. In June 2018, Janniny successfully petitioned for modification of the CPO and was allowed to see Child 1 with supervised visits at a third party location. (ECF No. 176-1, PageID 5077–78.)

The City dismissed the underlying criminal charges without prejudice on August 27, 2018. (ECF No. 8-1, PageID 106.)

### 2.    April 10, 2018 Custody Order

Corey petitioned the Franklin County Court of Common Pleas, Juvenile Division for an Emergency Order of Custody on March 28, 2018. (ECF No. 176-2, PageID 5241.) Janniny was served with notice of the April 9, 2018 hearing on his petition but did not appear. (Case No. 19-cv-5282, ECF No. 8-1, PageID 94; Case No. 19-cv-3120, ECF No. 169, PageID 4912–14.) The April 10, 2018 Order granting Corey's request provided:

> Present for the full hearing were [sic] . . . Corey Hedges. The Court, being fully advised in the premises, having received sworn, recorded testimony from [Corey] and for good cause shown, hereby **GRANTS** [Corey]'s *ex parte* Motion and grants temporary emergency custody to [Corey] until further Order of this Court.
> Mr. Hedges testifies that he is [Child 1's] father, and he has not seen [Child 1] for three years. . . . Janniny Da Silva [sic] was served by the Mahoning County Sheriff and was not present for this hearing. After the hearing, based on a Complaint filed in the Franklin County

Municipal Court under Case No. 18/6321-1 (Exhibit A) and 18/6321-2 (Exhibit B) the Court finds that it is in the minor child's best interest for [Corey] to have temporary custody of [Child 1] until further order of the Court.

(ECF No. 8-1, PageID 94; ECF No. 176-2, PageID 5241.) A further hearing was set for May 15, 2018. *Id.*

### 3. August 15, 2018 Criminal Charges

While the first criminal case was pending, Rhiannon filed another Complaint against Janniny for domestic violence and assault based on the same events as the April 2, 2018 Complaint. (ECF No. 176-1, PageID 5078–80.) Attorney Tobias authorized the Complaint, and a deputy clerk stated the Complaint had been reviewed and probable cause found. *Id.* Janniny was summoned for a hearing on the August charges in Franklin County Municipal Court on August 27, 2018. *Id.* She attended the hearing with both of her attorneys, who had the opportunity to question witnesses. (ECF No. 169, PageID 4871–75.)

Ultimately, the Court granted Janniny's Motion to Dismiss the second case on November 2, 2018 due to speedy trial violations. (ECF No. 8-1, PageID 107.) Janniny was able to see Child 1 by the end of the year. (ECF No. 169, PageID 4907.)

### 4. Remaining Claims

Janniny filed this suit in November 2019. After the Court's September 2020 Opinion and Order, Janniny's § 1983 and § 1985 claims against the City remain based on the alleged violation of her right to intimate association with, and to parent and raise, Child 1, under the Fourteenth Amendment's Procedural Due

Process Clause, as well as an alleged violation of her constitutional right to travel. (ECF No. 113, PageID 1267–68.) The City moves for summary judgment on each.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some

metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one–sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

## III.  ANALYSIS

### A.  *The Rooker-Feldman* doctrine does not apply.

Michael argues the Court lacks subject matter jurisdiction over Courtney's claims due to the *Rooker-Feldman* doctrine. (ECF No. 183, PageID 5356; ECF No. 210, PageID 9238–39.) *Rooker-Feldman* "precludes federal district courts from hearing cases brought by state-court losers complaining of injuries caused by state-court judgments." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 674

(6th Cir. 2018) (internal quotation omitted). Courts determine the applicability of the doctrine "by looking to the source of the injury the plaintiff alleges in the federal complaint." *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012) (internal quotation omitted). *Rooker-Feldman* blocks a claim "only when a plaintiff complains of injury from the state court judgment itself." *Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007) (quotation omitted). "In contrast, where a plaintiff does not seek 'redress for an injury allegedly caused by the state court decision itself,' but instead 'seeks redress for an injury allegedly caused by the defendant's actions,' *Rooker-Feldman* does not apply." *Hake v. Simpson*, 770 F. App'x 733, 736 (6th Cir. 2019) (citing *Brent*, 901 F.3d at 674.) Accordingly, *Rooker-Feldman* "occupies narrow ground." *Brent*, 901 F.3d at 674.

Michael argues Courtney's claims are on that narrow ground. Specifically, Michael states the CPO that divested Courtney of custody of her Children is the source of her claimed injury, and *Rooker-Feldman* bars her claims. (ECF No. 183, PageID 5356.)

The Sixth Circuit's summary of a similar case, *Brokaw v. Weaver*, 305 F.3d 660, 664–65 (7th Cir. 2002), is instructive:

> In *Brokaw*, the plaintiff brought suit against defendants in the child neglect office based on a conspiracy to take away her children. Crucially, Brokaw alleged that "the defendants conspired—prior to any judicial involvement—to cause false child neglect proceedings to be filed." *Id.* at 665. The Seventh Circuit specifically held that the plaintiff "is not merely claiming that the decision of the state court was incorrect or that the decision violated her constitutional rights; rather, she is alleging that the people involved in the decision to forcibly remove her from her home and her parents and subject her to the custody of the [Illinois Department of Children and Family Services]

13

violated her constitutional rights, independently of the state court
decision." *Id.*

*Reguli v. Guffee*, 371 F. App'x 590, 596–97 (6th Cir. 2010).

As the Amended Complaint makes clear, Courtney does not seek relief from
the CPO itself (which has expired); her claims are independent. *See Brokaw*, 305
F.3d at 664–65 (internal quotations omitted) ("The pivotal inquiry in applying the
doctrine is whether the federal plaintiff seeks to set aside a state court judgment or
whether he is, in fact, presenting an independent claim.") Courtney alleges the
Defendants worked together prior to the issuance of the CPO to weaponize the
system and cause her injury—the deprivation of access to her children. (*See, e.g.*,
ECF No. 59, ¶¶ 1–3, 28–29, 33–38, 45–47, 52–90, 112–26.)

Because Defendants allegedly caused Courtney's injuries, and because
Courtney does not seek review of a state court order, *Rooker-Feldman* is
inapplicable, and this Court has jurisdiction over her claims.

**B.    The City is not immune from Plaintiffs' claims.**

The City argues it is absolutely immune from all remaining claims because
the Court previously found the prosecutors were entitled to prosecutorial immunity.
(ECF No. 113, PageID 1242; ECF No. 180, PageID 5280.) The City's attempt to
obtain immunity vicariously through its prosecutors fails. As this Court previously
held, "municipalities have no immunity from damages liability flowing from their
constitutional violations." (ECF No. 113, PageID 1243) (quoting *Owen v. City of
Independence*, 445 U.S. 622, 657 (1980)). Thus, the City does not enjoy the same

immunities as its prosecutors. *Smith v. Patterson*, 430 F. App'x 438, 440 (6th Cir. 2011).

### C. Defendants are entitled to judgment on the § 1983 claims.

#### 1. Procedural Due Process Municipal Liability Claims

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "[D]ue process can be summarized as the requirement that a person . . . be given notice of the case against him and an opportunity to meet it." *Shoemaker v. City of Howell*, 795 F.3d 553, 559 (6th Cir. 2015) (internal quotations and citation omitted). "Essentially, procedural due process contains the opportunity to be heard 'at a meaningful time and in a meaningful manner' . . . ." *Two Bridges, LLC v. City of Youngstown*, No. 4:20CV2759, 2022 U.S. Dist. LEXIS 84624, at *16 (N.D. Ohio May 10, 2022) (quoting *Garcia v. Fed. Nat. Mortg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015)).

"The Fourteenth Amendment does not create a private right of action; instead, § 1983 provides a cause of action for all citizens injured by an abridgement of th[e] protections set forth in the Equal Protection and Due Process Clauses of the Fourteenth Amendment." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 683 (6th Cir. 2018) (internal quotations and citation omitted.) "To establish a procedural due process claim pursuant to § 1983, plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due

Process clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999) (citing *Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990)).

The City asserts that it did not cause Plaintiffs' alleged due process violations. Michael asserts the same for Courtney's asserted deprivations. Thus, the question is whether these Defendants caused the alleged deprivations. *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007). In this regard, Plaintiffs must first establish that the City "engaged in a 'policy or custom' that was the 'moving force' behind the deprivation of the plaintiff's rights." *Powers*, 501 F.3d at 607 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). According to the Supreme Court, a municipal policy is "a policy statement, ordinance, regulation, or decision officially adopted and promulgated," while a custom "has not received formal approval through . . . official decision-making channels." *Monell*, 436 U.S. at 690–91. "A § 1983 plaintiff may establish the existence of a custom by showing that policymaking officials knew about and acquiesced in the practice at issue." *Powers*, 501 F.3d at 607 (citing *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004)).

Additionally, Courtney must prove that the City and Michael were, and Janniny must prove that the City was, the "moving force" behind the alleged deprivation of their federal rights. *Monell*, 436 U.S. at 694. "At bottom, this is a causation inquiry, requiring the plaintiff to show that it was the defendant's custom

or policy that led to the complained of injury." *Powers*, 501 F.3d at 608 (citing

*Garner v. Memphis Police Dep't*, 8 F.3d 358, 363–64 (6th Cir. 1993)). In this regard,

the Court considers whether the Defendants' actions were "both the cause in fact

and the proximate cause" of the alleged deprivations of Plaintiffs' constitutional

rights. *Powers*, 501 F.3d at 608. As to the former, "[c]onduct is the cause in fact of a

particular result if the result would not have occurred but for the conduct.

Similarly, if the result would have occurred without the conduct complained of, such

conduct cannot be a cause in fact of that particular result." *Id.* (quoting *Butler v.*

*Dowd*, 979 F.2d 661, 669 (8th Cir. 1992)). Regarding the latter, proximate cause is

"about the appropriate scope of responsibility." *Powers*, 501 F.3d at 609 (citation

omitted). Thus, foreseeability is the lens through which proximate cause is

examined. The Court asks "whether it was reasonably foreseeable that the

complained of harm would befall the § 1983 plaintiff as a result of the defendant's

conduct." *Id.* (citation omitted).

### a)     Civil Orders and Criminal Charges

While no party briefed the policy or custom requirement for claims premised

upon CPOs and criminal charges, Plaintiffs allege the City had policies or customs

of providing individuals who came to the Prosecutor's Office with direction of how to

obtain CPOs and encouraging the filing of criminal charges in an unlawful manner.

(19-cv-3120, ECF No. 59, ¶¶ 54, 57, 64, 81–83, 105; 19-cv-5282, ECF No. 8, ¶¶ 3, 46,

60, 83, 192.) Without opposition from the City, the Court assumes the existence of

those policies or customs only for purposes of addressing the City's summary

judgment motion.

### (1)    Courtney

Courtney's § 1983 claims are based on the alleged deprivation of her right to intimate association with, and to parent and raise, her Children. This is a protected right. *Schulkers v. Kammer*, 955 F.3d 520, 539 (6th Cir. 2020).

Courtney's initial CPO hearing was conducted before, and the resultant CPO was issued by, the juvenile court *ex parte* pursuant to Ohio Revised Code § 3113.31. (ECF No. 59-13.) The CPO prevented Courtney from seeing the Children. *Id.* Maria sought and obtained the CPO. So, the City argues it was Maria, not the City, that deprived Courtney of her parental rights. (ECF No. 180, PageID 5275–76.) In response, Courtney agues it was the City that: (1) told Michael how to pursue the CPO; (2) failed to provide her with the same information; and (3) kept her "occupied" while Maria obtained the CPO. (ECF No. 208, PageID 9125–27.) In other words, Courtney argues that the City was the "moving force" behind her alleged constitutional deprivation.

Her argument is unavailing. As the City correctly argues, the record is undisputed that Maria, not the City, went to the prosecutor's office with the intention to obtain a CPO; knew how to pursue a CPO before she went there; did not speak with anyone at the Prosecutor's Office; did not hear anyone from the Prosecutor's Office speak with Michael; did not receive instructions from the Prosecutor's Office on how to file a CPO petition; and completed the CPO petition. (ECF No. 146, PageID 4206–07, 4211, 4214–15; ECF No. 180, PageID 5275–76, ECF No. 157, PageID 1957–58.) Consequently, Courtney fails to prove that the City was

the cause in fact and the proximate cause of her alleged deprivations stemming from the CPO.

The City is entitled to judgment on Courtney's § 1983 claim based on the criminal charges as well. First, no order was issued in the criminal case until after Courtney appeared with counsel. (ECF No. 59-7.) She therefore had notice and an opportunity to be heard on the charges which satisfied traditional due process requirements. (*See* ECF No. 113, PageID 1254 (stating the question "is whether Plaintiffs received notice and an opportunity to be heard with respect to" loss of access to Children).) Second, the criminal order directed that Courtney "follow recommendations of [Franklin County Children's Services] with regard to visitation with Children." (ECF No. 59-7.) The order made no reference to the CPO. *Id*. Courtney therefore fails to sustain her burden of proving that the City deprived her of the identified constitutional interest and that the City did so without affording her adequate procedural rights as to the criminal charges.

The City's Motion for Summary Judgment on Courtney's § 1983 procedural due process municipal liability claims is **GRANTED**. (ECF No. 180.)

### (2) Janniny

Janniny's right to parent § 1983 claims, like Courtney's, contain two prongs— the custody order and the criminal charges. Because Janniny received adequate due process prior to the alleged deprivations, the City is entitled to judgment in its favor on both.

The juvenile court held a hearing on Corey's application for an emergency order of custody on April 9, 2018. (ECF No. 8-1, PageID 94.) As the City points out,

Janniny was served with notice of the hearing and had an opportunity to be heard but failed to appear. *Id*. The custody order was issued on April 10, 2018. *Id*. Janniny does not contest those facts. Because she received adequate procedural due process prior to the alleged deprivation, the City's summary judgment motion on her § 1983 municipal liability claims for the custody order is **GRANTED**. (ECF No. 180.)

Turing to the criminal complaints, for the April 2, 2018 Complaint, Janniny received notice of the May 1, 2018 hearing and appeared with counsel who questioned witnesses. (ECF No. 180, PageID 5277; ECF No. 169, PageID 4747–4854.) An Order of Protection was issued after that hearing. (ECF No. 169, PageID 4851–54; ECF No. 169-1, PageID 4992–99.) Thus, Janniny had adequate procedural due process prior to the May 1, 2018 Order of Protection being issued. Janniny's undeveloped and unsupported statement that the hearing was "not meaningful" because the judge "had no reasonable ability to deny the TPO" since "the order of the [juvenile] Court had essentially" removed Child 1 from Janniny's custody does not change that conclusion. (ECF No. 208, PageID 9128). Janniny's argument amounts to nothing more than speculation and is insufficient to overcome clear evidence that Janniny received notice and a full opportunity to be heard. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation omitted) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put

flesh on its bones.") Summary judgment is **GRANTED** to the City on this claim. (ECF No. 180.)

Finally, for the August 15, 2018 Complaint, Janniny received notice and an opportunity to be heard for a hearing on those charges. (ECF No. 169, PageID 4870–75.) On August 27, 2018, Janniny appeared with counsel who presented evidence and questioned witnesses. (ECF No. 169, PageID 4870–75.) Janniny disputes none of this. (ECF No. 208.) Because Janniny had adequate procedural due process for the August 15, 2018 charges, the Court **GRANTS** the City's motion for summary judgment on this claim. (ECF No. 180.)

In sum, the City is granted summary judgment on Janniny's § 1983 right to parent municipal liability claims. (ECF No. 180.)

> **b)** **Janniny's § 1983 Right to Travel Claims Against the City**

Janniny claims that the City violated her constitutional right to travel. (ECF No. 8, ¶ 119.) Preliminarily, Janniny fails to cite to any authority establishing that there is a constitutional right to travel. (ECF No. 208.) But because the City does not argue that the claimed right fails to enjoy constitutional protection, the Court assumes the right exists for the purposes of the instant motion.

The City's motion properly highlights Janniny's admission that she did not know of any policy or custom of the City that inhibited her right to travel. (ECF No. 180, PageID 5279; ECF No. 169, PageID 4908.) Janniny does not respond to this argument. (ECF No. 208.) Because Janniny fails to identify a policy or custom "that was the moving force behind the deprivation of" her constitutional right to travel,

this claim fails under *Powers*. 501 F.3d at 607. The Court **GRANTS** the City's

Motion for Summary Judgment on Janniny's § 1983 right to travel claim. (ECF No.

180.)

### 2.    Courtney's § 1983 Claims Against Michael

"Section 1983 establishes a private right of action against any person who,

acting under the color of state law, causes another person to be subjected to the

deprivation of a right, privilege, or immunity secured by the Constitution or laws of

the United States." *Herman v. Ohio Univ.*, No. 2:19-cv-201, 2019 U.S. Dist. LEXIS

202806, at *3 (S.D. Ohio Nov. 22, 2019) (Morrison, J.) (internal quotation omitted).

Assuming, *arguendo*, that Michael was a state actor when he undertook the

actions at issue, he is still entitled to judgment on Courtney's § 1983 claims because

he did not cause her purported injury. (ECF No. 183, PageID 5353–55; ECF No.

210, PageID 9237–38.) As described above, Maria sought and obtained the *ex parte*

CPO that removed the Children from Courtney's care on November 9, 2017. (ECF

No. 59-13.) The criminal complaint that Michael signed was not filed until

November 16, 2017—*after* the CPO had been issued and *after* Courtney had lost

custody.  (ECF No. 59-1.) Consequently, the CPO caused the deprivation, not the

criminal charges, and the record is clear that Michael was neither "the cause in

fact" nor "the proximate cause" of Courtney's alleged deprivations of her

constitutional rights. *Powers*, 501 F.3d at 608. Michael's Motion for Summary

Judgment on Courtney's § 1983 claims is **GRANTED**. (ECF No. 183.)

### D.    The individual defendants are entitled to judgment on the § 1985 claims.

The Amended Complaints make no explicit reference to § 1985, but the Court's Opinion and Order on the Motions to Dismiss read the pleadings to assert such a cause of action against the City, Michael, Shane, and Maria for Courtney and against the City for Janniny. (ECF No. 113, PageID 1263 n. 8.)

Shane, Maria, and Michael systematically review § 1985 and detail why judgment in their favor is proper. (ECF No. 186, PageID 5392–94.) Courtney responds that those defendants should have moved to dismiss under Fed. R. Civ. P. 12(b)(6). (ECF No. 204, PageID 8782; ECF No. 209, PageID 9185.) That is an insufficient opposition to a properly supported motion for summary judgment. *Clark v. City of Dublin*, 178 Fed. Appx. 522, 524–25 (6th Cir. 2006) (finding district court did not err in holding because the appellant did not properly respond to the arguments asserted against his claims by the appellees in their motion for summary judgment, the appellant had abandoned those claims).  The summary judgment motions of Shane, Maria, and Michael on Courtney's § 1985 claims are **GRANTED**. (ECF Nos. 183, 186.)

### E.    Further briefing on the § 1985 claim against the City is required.

The City moved for summary judgment on Courtney's and Janniny's § 1985 claims on immunity grounds. (ECF No. 180, PageID 5279–80.) The Court holds in Section III.B. *supra* that the City is not immune. The City shall file a dispositive motion as to Courtney's and Janniny's § 1985 claims within ten days of this Opinion

and Order. Courtney and Janniny shall file their responses, if any, ten days later. The City's reply, if any, shall be filed seven days later.

### F. Courtney's intentional infliction of emotional distress and conspiracy claims are held in abeyance.

28 U.S.C. § 1367(c)(3) allows district courts to decline to exercise supplemental jurisdiction over state law claims if all claims over which the court has original jurisdiction have been dismissed. *See Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 584 (6th Cir. 2011) (the Sixth Circuit "applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed"). Because all of Courtney's federal claims have been resolved except for her § 1985 claim against the City, it would be premature to decide whether the Court will exercise supplemental jurisdiction over her remaining state law claims against Michael, Shane, and Maria. Accordingly, the Court holds Courtney's claims for intentional infliction of emotional distress and conspiracy in abeyance pending adjudication of the remaining § 1985 claim.

### G. The Doe Defendants are dismissed.

Lastly, both Plaintiffs name Doe Defendants. (19-cv-3120, ECF No. 59; 19-cv-5282, ECF No. 8.) To date, Plaintiffs have neither moved to amend their respective Amended Complaints to substitute the real name(s) of those defendants nor effected service upon them as required by Federal Rule of Civil Procedure 4(m). Accordingly, Plaintiffs' claims against the Doe Defendants are **DISMISSED WITHOUT PREJUDICE** under Rule 4(m) for failure to timely effect service of process.

## IV.    CONCLUSION

The City's Motion for Summary Judgment on all of Courtney's and Janniny's claims except for their § 1985 claims is **GRANTED**. (ECF No. 180.)

The City shall file a dispositive motion as to Courtney's and Janniny's § 1985 claims within ten days of this Opinion and Order. Courtney and Janniny shall file their responses, if any, ten days later. The City's reply, if any, shall be filed seven days later.

Shane and Maria's Motion for Summary Judgment on Courtney's federal claims is **GRANTED**. (ECF Nos. 186, 201, 203.)

Michael's Motion for Summary Judgment on Courtney's federal claims is **GRANTED**. (ECF Nos. 183, 202.)

Courtney's state law claims for intentional infliction of emotional distress and conspiracy are held in abeyance pending the adjudication of the remaining § 1985 claim.

Plaintiffs' claims against the Doe Defendants are **DISMISSED WITHOUT PREJUDICE** under Rule 4(m) for failure to timely effect service of process.

**IT IS SO ORDERED**.

s/Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**